CHERDRON CONST. CO. et al. v. SIMPKINS et al.

No. 3928.    Decided April 10, 1923.    (214 Pac. 593.)

1. MASTER AND SERVANT—WORKMAN SUFFERING HEART LESION FROM OVEREXERTION HELD INJURED BY ACCIDENT, WITHIN COMPENSATION ACT, "ARISING OUT OF OR IN THE COURSE OF EMPLOYMENT." A strong able-bodied workman wheeling a cart weighing 1,200 pounds up an incline who suffered a mitral heart lesion during his endeavor to prevent the cart from backing down when it slipped, *held* injured by accident "arising out of or in the course of his employment," within the Industrial Act, so as to entitle him to compensation.[1]

Proceeding under the Industrial Act by David Simpkins, claimant, opposed by the Cherdron Construction Company, employer, and the United States Fidelity & Guaranty Company, insurer.   The Industrial Commission made an award, and employer and insurer bring certiorari.

AFFIRMED.

*Booth, Lee, Badger & Rich,* of Salt Lake City, for plaintiffs.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty. Gen., for defendants.

THURMAN, J.

Certiorari to review an award of compensation by the

---

[1] *Tintic Milling Co.* v. *Industrial Commission,* 60 Utah, 14, 206 Pac. 278.

494 SUPREME COURT OF UTAH [Apr.

Cherdron Const. Co. v. Simpkins, 61 Utah 493

Industrial Commission of Utah to one David Simpkins for an injury alleged to be within the Industrial Act (Comp. Laws 1917, §§ 3061-3165). The Commission found that the applicant, Simpkins, was an employé of the plaintiff construction company, which had in its employ three or more workmen, and was insured by the plaintiff United States Fidelity & Guaranty Company. It also found that Simpkins was being paid the sum of $4 per day, working 5½ days a week. The Commission then found as follows:

"That on the 22d day of July, 1922, at about 11 o'clock a. m., the applicant, with another employé, was wheeling concrete up a 13 per cent. grade in the construction of the Lafayette school at Salt Lake City, in a two-wheeled cart weighing an aggregate of about 1,100 or 1,200 pounds loaded, when about halfway up the incline with this load the applicant slipped, and in his endeavor to hold the cart from backing down the incline applicant experienced a peculiar sensation, became weak and trembling. He did not realize what had happened, stood still for a few minutes after dumping his load with the assistance of others, and came down the incline, but could not make any more trips. That the applicant suffered as a result of said strain and overexertion, a mitral heart lesion. That at noon the applicant was obliged to discontinue his employment and go home, following which he telephoned Dr. Hanchett about the accident, and was advised by the doctor to call at his office, which he did the following Saturday, July 29, 1922. The applicant remained at home until the day following his accident, when he telephoned the employer that he was unable to report for work. On July 24 the applicant returned to work, fearing if he did not do so he would be discharged. He was given light work in the way of pulling nails, with the exception of once or twice he was asked to assist in scraping sand with a scraper for short periods. The applicant worked at this light employment intermittently, being obliged to lay off occasionally on account of the condition of his heart, from July 24th to August 10th, on which latter date, while shoveling dirt for a trench where the bank had caved in, the applicant collapsed. Dr. Hanchett was called to the place of his employment and attended the applicant, after which he was taken home, and has been temporarily totally disabled since then up to the date of hearing, with the probability of continued disability. That prior to July 22, 1922, the applicant was strong and healthy, and very active."

From the foregoing findings the Commission concluded that the case was within the Industrial Act, and that the

Certiorari

applicant, Simpkins, on the 22d day of July, 1922, was injured by reason of an accident arising out of or in the course of his employment, and made its award accordingly.

The sole question submitted for our determination is: Did the Commission exceed its jurisdiction in determining that the injury complained of was the result of an accident, within the meaning of the Utah Industrial Act? It is a mixed question of law and fact, involving the necessity of determining whether the evidence supports the findings and whether the findings warrant the conclusion.

The testimony of the applicant himself tends to show: That on the 22d day of July, 1922, he was in the employment of the plaintiff construction company, and was working on the Lafayette School building in Salt Lake City. That about 11 o'clock a. m. on said day he was engaged with another laborer in wheeling concrete from the bin up a steep incline to the east wall of the building; that when they reached a point within 7 or 8 feet of the top where the concrete was to be dumped he "kind of slipped," and when he slipped "the car turned kind of sideways," and his companion stopped, and the car stopped, also. That other boys on the wall pulled the cart up. When he stopped a peculiar feeling came over him—a tingling sensation. He had never had anything like it before in his life. He went home at noon, and remained until the following day, when he returned, but could not work. He was afraid of being discharged, and returned again the next day, when they gave him a light job, pulling nails.

The testimony of the applicant further shows that he worked intermittently on light jobs from then on until the 10th of August. Some days he would "lay off." On the 10th of August he was throwing dirt from a shovel along with other men until near quitting time, when he asked his boss to let him off, as he was "all in." The boss told him he had done nothing that day, and to keep going; "it wouldn't be much longer." He then worked 10 or 15 minutes longer, when his son came. He asked the boss to let his son take the shovel and let applicant off; that he

didn't want overtime; that he couldn't stand the work. The boss said, "Well if that is the way you feel, you better quit and go home." He dropped the shovel and started off to check in. The night watch saw him, and asked him what was the matter, and if he needed help. He did not answer, but seemed exhausted. He was helped down to the office. He seemed to lose his memory as to just what happened. He felt the same feeling as on the first day, but on that day it didn't "weaken him down."

Dr. Hanchett testified he attended applicant on July 29th, one week after the alleged accident. At that time applicant showed weakness, apparently from the heart, and told the doctor that he had a sudden collapse. The doctor thought he told applicant he found no leakage—no organic trouble. He thought the injury was due to overexertion. The applicant had always been hale and hearty. Later, on the 10th day of August, the doctor visited him again, and found the heart in bad condition. A mitral heart lesion usually comes from poison irritating the valves of the heart, but it may come from overexertion as well. The doctor did not recall finding any valvular trouble on his first visit. His conclusion that the injury was caused by overexertion was based on the fact that applicant was well before, and in strenuous work became exhausted. The doctor said he had every reason to believe applicant was all right up to that time. Dr. Hanchett had been applicant's family physician for many years.

Other witnesses also testified to the physical condition of applicant prior to the alleged accident as that of a strong, able-bodied man. The evidence is undisputed that he was at least physically equal to the average able-bodied man, capable of doing hard manual labor prior to the happening of the injury. The load he was wheeling on the 22d day of July would weigh between 1,100 and 1,200 pounds, including the cart. The applicant has been totally disabled ever since August 10, 1922.

It was stipulated that the findings of Dr. Murphy, a witness for plaintiffs, might be submitted in writing after he

had examined the applicant. ₁ The examination was had, and Dr. Murphy submitted the following findings:

"Mr. Simpkins, 45 years old, has done hard labor most of his life. He gives a history of having had compound fracture of left humerus; otherwise no severe accident. Has had none of the diseases which as a rule account for valvular cardiac trouble, such as tonsilitis, rheumatism, scarlet fever, or any of the drastic diseases. On July 22d, 1922, while working for the Cherdron Construction Company, at the Lafayette School, shortly after 11 a. m., while wheeling concrete in a two-wheel cart first on the level and then on an incline, while going up the incline the cart slipped, causing him to get a wrench. He had to hold the cart from backing down the incline with all his strength. He noted at this time, as he puts it, a 'funny sensation' came over him; he was 'weak, and trembled.' He did not realize what had happened, he stood still a few minutes after dumping his load, and went down for his next load of concrete. He knows he made one more trip up the incline but is not sure of more than this one trip. He went home at noon of this day and returned to work July 24, 1922, and continued to work until August 10, 1922. He has been under the care of a physician from July 29th till now. August 10th he was taken while at work with some sort of spell, became unconscious, and his physician was called to the works, and after remaining there some few minutes he took him home. Now, I find a well-nourished, well-developed male about 45 years of age. Heart area enlarged. Apex found 4½ inches from the mid-line to the sixth interspace on left. There is a distinct mitral systolic lesion transmitted into the left axilla (leakage mitro valve). Systolic blood pressure 118, diastolic 67. It is going to be a hard matter to decide whether this heart lesion was caused before receiving said strain. It is possible to receive such a lesion from excessive physical strain."

The foregoing epitome of the evidence constitutes the basis of the Commission's findings, from which it concludes that the injury was the result of an accident. Plaintiff's vigorously challenge the conclusion. A careful examination of the authorities justifies the suggestion that this is a border line case.

In *Tintic Milling Co.* v. *Industrial Commission,* 60 Utah 14, 206 Pac. 278, this court determined the meaning of the word "accident" as that term is used in the Utah Industrial Act. Without further comment as to the meaning of the word, we refer the reader to our views as expressed in that opinion. Numerous cases are cited in the

498        SUPREME COURT OF UTAH        [Apr.

Cherdron Const. Co. v. Simpkins, 61 Utah 493

opinion which clearly illustrate the views of the court. Many of the cases tend in a greater or less degree to support the contention of defendant in the instant case. That was a case in which the applicant for compensation had been working for several years in and about the mines— sometimes in plaintiff's mill, and sometimes on the roaster, making repairs. He had had a ''spell of flu'' a year or two before the injury complained of, and according to the testimony of plaintiff's expert, he was afflicted with pulmonary tuberculosis. On the occasion of the injury he, with another employé, was ordered to change a bulkhead in a certain flue that carried the fumes from the roaster. When they first made the attempt to enter the flue the fumes were so strong they could no go in, and had to wait about half an hour. They then went in and removed the bulkhead, whereupon applicant became sick, and went out and vomited. He continued to work for two or three days, but coughed continually. His physician told him his injury was caused by the gas and fumes. He did no more work after the fourth day succeeding the injury. The sole question in that case was the same as in the case at bar: Was the injury the result of an accident? Upon the authorities cited in the opinion, under the facts of the case, we arrived at the conclusion that the injury was the result of the accident, and affirmed the award. The court based its conclusion on the fact that the applicant, although previously afflicted with pulmonary tuberculosis, had nevertheless been able to perform his work the same as other laborers in plaintiff's employ. The injury of which he complained happened suddenly at a definite time and place, entirely unexpected to the applicant. From a man comparatively well and able to pursue his calling he all at once became temporarily, if not permanently, disabled, and thereafter was unable to work.

There are striking analogies in principle between that case and this, which will readily occur to the reader. We need not burden this opinion with a detailed or analytical comparison. Many of the cases reviewed on pages 21-23 of

60 Utah and 281, 282 of 206 Pac. bear strong resemblance to the instant case.

Plaintiffs strenuously urge the point that applicant's injury in the present case was simply due to overexertion, and not to an accident within the meaning of the statute. Many cases are referred to and excerpts quoted therefrom, among which are the following: *Englebretson* v. *Ind. Com.*, 170 Cal. 793, 151 Pac. 421; *Jakub* v. *Ind. Com.*, 288 Ill. 87, 123 N. E. 263; *Stombaugh* v. *Peerless Wire Fence Co.*, 198 Mich. 445, 164 N. W. 537; 15 N. C. C. A. 635; *Tackes* v. *Bryant & Detwiler*, 200 Mich. 350, 167 N. W. 36; *Kutschmar* v. *Briggs Mfg. Co.*, 197 Mich. 146; 163 N. W. 933, L. R. A. 1918B, 1133. These cases undoubtedly lend some support to plaintiffs' contention. Most of them are cases in which the applicant was previously afflicted with heart disease, thereby giving support to the view that the death resulted from disease, rather than from accident. It is not necessary to review the cases at length. When it is conceded that they afford some justification for plaintiffs' contention, we have conceded all that can be claimed for them.

Defendant in reply, in addition to the *Tintic Milling Co.* Case, supra, cites the following English and American cases: *Clover-Clayton & Co.* v. *Hughes* (Eng.) 3 B. W. C. C. 275; *Doughton* v. *Hickman* (Eng.) 6 B. W. C. C. 77; *McArdle* v. *Swansea Harbor Trust* (Eng.) 8 B. W. C. C. 489; *Trodden* v. *McLennard & Sons, Ltd.* (Eng.) 4 B. W. C. C. 190; *Indian Creek Coal & Min. Co.* v. *Calvert*, 68 Ind. App. 474, 119 N. E. 519, 120 N. E. 709; *Uhl* v. *Guarantee Const. Co.*, 174 App. Div. 571, 161 N. Y. Supp. 659; *Fowler* v. *Risedorph Bottling Co.*, 175 App. Div. 224, 161 N. Y. Supp. 535; *Schroetke* v. *Jackson-Church Co.*, 193 Mich. 616, 160 N. W. 383, L. R. A. 1917D, 64; *Haskell & Barker Car Co.* v. *Brown*, 67 Ind. App. 178, 117 N. E. 555.

In *Clover-Clayton & Co.* v. *Hughes*, supra, the syllabus states the character of the injury and the holding of the court:

"A workman suffering from an advanced aneurism of the aorta was doing his work in the ordinary way by tightening a nut with

a spanner. This ordinary strain caused a rupture of the aneurism resulting in death. *Held,* an accident within the meaning of the English act."

In *Doughton* v. *Hickman, Ltd.,* supra, the syllabus reflects the opinion:

"A workman, whose duty it was to load heavy sacks onto a truck and then with the help of another to push the truck along rails, was suffering from a weak heart. Shortly after he had been pushing an empty truck, and while he was having a rest, he fell senseless and died afterwards. The medical evidence proved that the heart would not have failed had it not been subjected to some more than ordinary strain. The County Court judge inferred that a strain at work, constituting an accident, had caused the death. *Held,* there was evidence to support the inference."

Practically all of the cases relied on by defendant were cases in which strain or overexertion caused a sudden and unexpected injury or death. In each case, however, the court held it to be an accidental injury. These cases seem to be in harmony with the views expressed in the *Tintic Milling Case,* supra, and the authorities therein cited. We refer specially to three cases cited in that opinion in which the analogy to the instant case, in principle, at least, is somewhat striking: *Patrick* v. *J. B. Ham Co. et al.,* 119 Me. 510, 111 Atl. 912, 13 A. L. R. 427; *Caroll et al.* v. *Ind. Com.,* 69 Colo. 473, 195 Pac. 1097, 19 A. L. R. 107; *Gilliland* v. *Ash Grove Lime & Portland Cement Co.,* 104 Kan. 771, 180 Pac. 793. These cases are reviewed at some length in the opinion, to which the reader is referred.

In view of the authorities above referred to, and others which we have examined, we are of opinion that the decided weight of authority, under statutes similar to ours, is to the effect that strained effort or overexertion may cause an accidental injury for which compensation will be allowed. The underlying principle seems to be that the injury must' happen suddenly, undesigned and unexpected, and at a definite time and place.

In the case at bar the applicant prior to his injury was a strong, able-bodied man, capable of performing heavy manual labor. As shown by evidence which we have not referred to before, he selected this particular job because it

was heavy, and for the reason that it was more remunerative and profitable, and he felt capable of doing the work. The injury occurred while wheeling a heavy load of concrete up a steep incline to its destination. It occurred at 11 a. m. on the 22d of July, 1922. It happened suddenly, wholly undesigned and unexpected, and from that moment he became a broken, disabled man, wholly incapable of earning a living by his labor.

We are not unmindful of the fact that Dr. Hanchett failed to discover a mitral lesion of the heart on his first examination of the applicant. It nevertheless may have existed at that time, for he does not say it did not exist, but only that he did not discover it. He did discover it a few days later, at a time when the work in which the applicant had been engaged was not nearly so strenuous. No fair-minded person can doubt from reading the evidence that something serious suddenly happened to the physical being of the applicant on the 22d day of July, 1922, at a definite place and precise moment of time. Whether at that particular moment the lesion occurred, or whether the heart became weakened under the strain so that it became more susceptible to the lesion which was afterwards discovered, it is reasonably certain that one or the other actually occurred, and in our opinion there is no avoiding the conclusion that the injury to the applicant which he had never experienced before was the result of an accident on that particular occasion.

Whether the "slip" to which the appellant referred in his testimony had any causal connection with the injury, in our opinion, is not controlling. In his statement to Dr. Murphy he said the cart slipped while going up the incline, causing him to get a wrench. In any event, there was substantial evidence to the effect that the injury was caused by an accident which occurred at the time and place alleged in the finding, and that it happened at a time when the applicant was engaged in the course of his employment.

The Commission did not exceed its jurisdiction in making the award, and the same is therefore affirmed.

WEBER, C. J., and GIDEON, FRICK, and CHERRY, JJ., concur.