GRAYBAR ELECTRIC CO., Inc., v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 4773. Decided March 7, 1929. (276 P. 161.)

*Badger, Rich & Rich,* of Salt Lake City, for plaintiff.

*George P. Parker,* Atty. Gen., and *M. Logan Rich,* Asst. Atty. Gen., for defendant commission.

*Romney, Nelson & Eccles,* of Salt Lake City, for defendant Frendt:

FOLLAND, J.

This is a proceeding to review an award of compensation by the Industrial Commission in favor of Walter C. Frendt and against the Graybar Electric Company, a self-insurer. The only question presented by this review is whether or not, under the facts, the employe was injured by an accident arising out of or in the course of his employment. The plaintiff denies there was any accident within the meaning of the Industrial Act (Laws 1917, c. 100, as amended). It does not deny the employe was injured while in the course of the employment, but does contend that the injury was not the result of an accident. The findings of the commission, material to the question before us, are:

3. "That on the 19th day of April, 1927, Walter C. Frendt, the applicant herein named, while regularly employed by the Graybar Electric Company, and while engaged in moving heavy reels and coils of wire, sustained a severe strain causing a left incomplete traumatic hernia and sacro iliac strain. That he was operated for inguinal hernia on May 3rd, 1927, and made an uneventful recovery from said operation.

4. "That the applicant on the date of said injury wherein he received a sacro iliac strain, was afflicted with sinus trouble, which, as a result of said injury, became localized in his back. That he was totally disabled from the 1st day of April, 1928, to the date of the hearing (May 14th, 1928) and will, in all probability, continue to be totally disabled until such time as he receives proper medical treatment for the chronic infection in the sinus.

Conclusion. "In view of the foregoing findings, the Commission concludes that Walter C. Frendt was injured by reason of an accident arising out of or in the course of his employment while regularly employed by the Graybar Electric Company, as alleged in his application."

The employe worked for plaintiff regularly for about 15 months prior to his injury without missing a day, and received $25 per week. On April 19, 1927, in the course of his regular employment, while putting into stock some

heavy coils of wire, and while "heaving on the rolls," he experienced a sharp pain in his left side in the region of the groin, felt sick to his stomach, and, finding the pain did not subside, left work and reported the matter to his foreman. A few days later he undertook to load a truck with coils of galvanized iron wire, each coil weighing approximately 150 pounds. The coils were in a stack three or four feet high. He lifted one of the coils from the stack, and, upon turning around for the purpose of putting it on the truck, he felt a pain in his back and another pain in the left side above the groin. The pain was so sharp he had to drop the coil and stand a while. This condition was reported to the manager who sent the employe to a doctor. It was found he had suffered a left incomplete hernia and a sacroiliac strain. He was operated on for the hernia, and made an uneventful recovery. We are not concerned here with the hernia. The sacroiliac condition did not respond to treatment. The employe now wears a brace or corset, still complains of pain and soreness in the back, and is unable to work.

Upon a thorough examination by a nose and throat specialist it was found that the employe had a chronic sinus infection with polypus in the nose. While in the army an operation had been performed on his nose and some of the bone taken out. It is the opinion of one physician that the pain in the back "may be arthritis of the lumbar sacro or sacro iliac joint," and that it was the result of the injury, plus infection from the nasal condition. Another physician examined him and gave as his diagnosis that this was "chronic infective arthritis of left sacro iliac joint, possibly super-imposed upon an injury."

There seems to be no dispute with regard to the facts, but it is earnestly contended by plaintiff that there was no accident which either caused or contributed to the condition from which Frendt is now suffering. Its position is stated as follows:

"There was infection in his system and it seems to have made itself manifest by the pain in the back or the sacroiliac strain. It required large imagination to say that anything connected with Mr. Frendt's employment contributed to the localization of the infection in the region of the back. But if the strain of his natural and ordinary work did contribute to the pain caused by the antedating infection, there was no accident in connection with the employment to cause or bring about the trouble. In other words, whatever the physical condition of the employe may have been from antedating causes of sinus trouble or infection there was nothing in connection with his employment of an accidental nature which was responsible for his trouble.

"It seems to us that there must be a distinction made between an injury and an accident. In the case at bar the applicant felt his pain, which was something out of the ordinary, at a particular time and place and it was unexpected, but that cannot be said to be an accident. The pain and the manner of it, the time of it and the occurrence of it, however sudden and severe it may have been, was the man's physical condition. It was not caused by an accident and if it can be termed an injury it was not by reason of an accident."

In support of this position the plaintiff quotes the definition of the word "accident" from Webster's New International Dictionary and 1 Honnold on Workmen's Compensation, pp. 274-278; cites the following Utah cases: *Pinyon Queen Mining Co. et al.* v. *Industrial Commission,* 59 Utah 402, 204 323; *Tintic Milling Co.* v. *Industrial Commission,* 60 Utah 14, 206 P. 278, 23 A. L. R. 325; *Cherdron Construction Co.* v. *Simpkins,* 61 Utah 493, 214 P. 593; and quotes with approval the separate opinion of Mr. Justice Frick in *Tintic Milling Co.* v. *Industrial Commission,* supra.

It is no longer an open question in this state that, other necessary conditions being present, a pre-existing disease or other disturbed condition of the physical structure of the body, when aggravated or lighted up by an accident, is compensable under the act. *Tintic Milling Co.* v. *Industrial Commission,* supra. The real point, however, is whether or not the strain from lifting which, it is alleged, caused or lighted up the sacroiliac condition, was an accident.

We are of the opinion there is legal and competent evidence to support the finding that this injury to the back was caused by accident as that word has been ∎ defined by the text-writers and the decisions of courts. One of the early English cases, wherein the word "accident" is defined, is that of *Fenton* v. *Thorley & Co.* (1903), A. C. 443, 72 L. J. K. B. (N. S.) 787, 52 Week. Rep. 81, 89 L. T. (N. S.) 314, 19 Times L. R. 684. There Fenton was injured by strain while engaged in his ordinary work and in doing or trying to do the very thing which he meant to accomplish. There was no evidence of any slip or wrench or sudden jerk. Lord McNaughton, in the course of the decision of the House of Lords, said: "If a man in lifting a weight or trying to move something not easily moved were to strain a muscle or rick his back or rupture himself the mishap, in ordinary parlance, would be described as an accident." It was decided that the word "accident" should have its ordinary and broad meaning. The Fenton Case has become a leading case in compensation matters.

We think this court has definitely settled this question. Mr. Chief Justice Thurman, in *Tintic Milling Co.* v. *Industrial Commission,* supra, and in *Cherdron Construction Co.* v. *Simpkins,* supra, made an exhaustive and learned review of the cases and the text-writers with respect to the meaning and scope of the word "accident." There is no need for us to again go over the same ground. In each of these cases there was an injury which aggravated or lighted up a pre-existing disease or other defective condition. The question to be determined was whether the injury was caused by accident. In the Cherdron Case the injured workman was pushing a heavy-wheelbarrow up an incline when it slipped. The employe endeavored to hold the cart from backing down, when he experienced a peculiar sensation and became weak and trembling. As a result of the strain and over-exertion the employe suffered mitral heart lesion. The learned Chief Justice, after reviewing and examining the cases, came to this conclusion:

"In view of the authorities above referred to, and others which we have examined, we are of opinion that the decided weight of authority, under statutes similar to ours, is to the effect that strained effort or overexertion may cause an accidental injury for which compensation will be allowed. The underlying principle seems to be that the injury must happen suddenly, undesigned and unexpected, and at a definite time and place."

In that case there was testimony of a slip by the wheelbarrow, and it was suggested that this was the accident, but Mr. Chief Justice Thurman, referring to that point, said:

"Whether the 'slip' to which the appellant referred in his testimony had any causal connection with the injury, in our opinion, is not controlling."

The more recent case of *McEwan* v. *Industrial Commission*, 61 Utah 585, 217 P. 690, is to the same effect. There it was held that the descent and strangulation of a pre-existing hernia, while the employe was lifting a large radiator which would have fallen and possibly injured him had he left it drop, was compensable as an injury resulting from accident. This was clearly a case of injury resulting from strain in lifting. In *Bamberger Coal Co.* v. *Industrial Commission*, 66 Utah 203, 240 P. 1103, the employe worked during the forenoon unloading a car of coal. At the noon hour he came into the office of the company and complained of pain in his chest. He was taken home and died within 24 hours of heart block. The doctor gave it as his opinion that the deceased had a "chronic mycarditis, a chronic inflammation of the heart muscles." The award was set aside upon the ground that there was no sufficient competent evidence to show that an accident had happened. Mr. Chief Justice Gideon, speaking for the court said:

"There is nothing to show a fall, strain, or overexertion on the part of the deceased. So far as the record discloses, he went to work in the morning, and continued without mishap until the noon hour. He then came into the office, where the other workmen were, apparently exhausted, complained of pain, and asked for assistance to get home. No facts are shown from which it can be reasonably in-

ferred that anything unusual or unexpected had happened during the morning hours."

Many cases are cited in the brief of defendants, but we think it unnecessary to review or cite them in view that the authorities have been thoroughly discussed in previous decisions of this court. We decide, therefore, that a strain or overexertion may cause accidental injury for which compensation will be allowed, where the injury happened suddenly, undesignedly, and unexpectedly and at a definite time and place. The facts here bring this case within this rule.

THE AWARD IS AFFIRMED.

CHERRY, STRAUP, ELIAS HANSEN, and EPHRAIM HANSON, JJ., concur.