# GERBER v. INDUSTRIAL COMMISSION et al.

No. 5821. Decided February 9, 1937. (64 P. [2d] 1281.)

*H. D. Lowry* and *J. Allan Crockett,* both of Salt Lake City, for plaintiff.

*Joseph Chez,* Atty. Gen., and *Bowen & Quinney,* of Salt Lake City, for defendants.

FOLLAND, Chief Justice.

Alleging total disability, William E. Gerber filed claim for compensation with the Industrial Commission of Utah averring that while working for the Colville Ice Cream Company he sustained an injury in the course of his employment. The claimed injury is that while lifting a cardboard box, filled with ice cream, from the floor of the "harding" (hardening) room of the company's plant on the evening of June 6, 1935, he suffered an injury to his heart evidenced by a severe pain in the chest which brought on a permanent and total disability. After hearing, the Industrial Commission denied compensation and found "that applicant is at the present time afflicted with heart disease which is not either directly or indirectly the result of an accident arising out of or in the course of his employment, while employed by the Colville Ice Cream Company." This finding involves two propositions: (a) That no accident happened as alleged, and (b) if the accident happened as alleged, it did not cause or contribute materially to the present heart condition of applicant. If either of these propositions is supported by any substantial evidence, in the event there is a conflict in the evidence, the decision of the Industrial Commission must be sustained; or, if either proposition rests on uncontradicted evidence, the decision cannot be overturned unless the commission acted arbitrarily or capriciously, and this may be tested by the rules laid down in *Norris* v. *Industrial Comm.,* 90 Utah 256, 61 P. (2d) 413, 415, which read:

"But in order to reverse the commission in this regard it must appear at least that (a) the evidence is uncontradicted, and (b) there is nothing in the record, which is intrinsically discrediting to the

uncontradicted testimony and (c) that the uncontradicted evidence is not wholly that of interested witnesses or, if the uncontradicted evidence is wholly or partly from others than interested withnesses, that the record shows no bias or prejudice on the part of such other witnesses, and (d) the uncontradicted evidence is such as to carry a measure of conviction to the reasonable mind and sustain the burden of proof, and (e) precludes any other explanation or hypothesis as being more or equally as reasonable, and (f) there is nothing in the record which would indicate that the presence of the witnesses gave the commission such an advantage over the court in aid to its conclusions that the conclusions should for that reason not be disturbed."

Plaintiff in his brief alleges three propositions:

1. "A pre-existing disease or other defective condition of the physical structure of the body, when aggravated or lighted up by an accident, is compensable under the Compensation Act [Rev. St. 1933, § 42-1-1 et seq.]."

2. "Injuries to a diseased heart caused by exertion or strain in the course of the employment are compensable."

3. "There is no other substantial evidence in the record except that the disability of the applicant resulted from an accident in the course of his employment. The Industrial Commission has arbitrarily refused to find according to the evidence."

The statement in the first proposition may be affirmed, since this court has many times so held. *Pinyon Queen Min. Co.* v. *Industrial Comm.*, 59 Utah 402, 204 P. 323; *Graybar Electric Co.* v. *Industrial Comm.*, 73 Utah 568, 276 P. 161; *Grasteit* v. *Industrial Comm.*, 76 Utah 487, 290 P. 764. Likewise, the second proposition may be taken as settled where the present condition of applicant was caused or contributed to in any material degree by accident in employment. *Cherdron Construction Co.* v. *Simpkins*, 61 Utah 493, 214 P. 593; *Hammond* v. *Industrial Comm.*, 84 Utah 67, 34 P. (2d) 687; *Smith* v. *Department of Labor and Industries*, 180 Wash. 84, 38 P. (2d) 1016. An affirmative holding on these propositions, however, does not determine this case.

The question for decision is stated in the third proposition. It is there claimed that there is no other substantial

evidence in the record except that the disability of plaintiff resulted from an accident in the course of his employment and that the Industrial Commission has arbitrarily refused to find according to the evidence. It will be necessary first to inquire whether the evidence compels a finding that there was an accident in the course of his employment as alleged by Gerber. The only evidence that he suffered such an accident, that is, that he lifted the package of ice cream from the floor of the hardening room and the effect of such exertion was pain in the chest and resulting heart failure, comes alone from the applicant. He was alone at the time and he, of course, is the only one who could tell the subjective symptoms. The evidence stands uncontradicted as it must under the circumstances. But must we say, as a matter of law, that the commission is obliged to accept his testimony as true? Gerber had been for some time, and was then, suffering from valvular muscular heart disease, and at the time of examination by physicians he had a decompensated heart; that is, it was unable to return to a normal beat in about a minute after the cessation of an exertion which had accelerated it. On the night of June 6, 1935, when it is claimed the accident happened, Gerber was working for the Colville Ice Cream Company as shipping clerk. He had been advanced to that position two days before. Prior to that, he had been night watchman. The company's product was put up in small containers and when the drivers returned from their respective routes, any of these containers which had not been delivered would be put into cartons or pasteboard boxes on the platform and thence moved into what was called the "hardening" room. There, individual containers would be put in shallow trays provided for the purpose, sorted according to flavors, and put on the shelves in appropriate places. It was Gerber's job to sort the containers and place them on appropriate shelves. He said he was lifting one of these boxes, estimated to weigh 130 to 140 pounds, when he felt a severe pain over the heart. He dropped the box, leaned against the shelf for ten minutes

and then went to a bench some 25 feet away and laid down for 30 minutes before finishing his work and going home. He made no outcry and made no complaint to any one although there was a night watchman some 30 or 40 feet away. He came to work the next day and did his work as usual, but avoided lifting. The day following, Gerber went to his work at the usual time, but in about two hours left for home without notifying any one at the plant that he was so doing. He now says he was in pain and could not work any longer. He has not worked since except to help around the home.

The history of his heart trouble as given by himself to various physicians, and part of which he testified to on the stand, was that in childhood he had rheumatism and frequent attacks of tonsilitis. He still has infected tonsils and infected teeth. Since 1931 he has had a bad heart. His symptoms on and after June 6, 1935, consisted of heart cramps, shortage of breath, fainting or dizziness, with blackness before the eyes. In 1931 while working for the City Waste Paper Company, he regularly experienced shortage of breath, swollen legs, feet, and ankles, occasional fainting spells and blackness before the eyes. Some or all of the symptoms were manifest every time he lifted anything heavy or exerted himself. While acting as night watchman for the Colville Company, he experienced breath shortage, fainting spells, and had pains, and at one time in 1934, while delivering ice cream at a wedding, he experienced about the same heart pains and sensations as he did in June, 1935, except they were less severe and he would have to rest ten minutes at a time, from time to time, before he could go on with his work.

After the so-called accident, he returned to work the next day and the employees who worked with him testified they were not able to discern any difference in his appearance nor did they notice any conduct indicating he was suffering pain. On the day following, he appeared to be in normal condition so far as his fellow employees could tell, but he left his work without saying a word to any one. The manag-

er of the company, shortly after, went down to Mr. Gerber's home to see why he had left. He testified he saw Gerber in the back yard, although Gerber testified he was lying in bed. At any rate, Gerber came into the room where the manager was but said nothing and left his wife to be the spokesman. He, at this time, made no claim of having suffered an accident or injury on the 6th of June, and it was two or three months later when his employer was notified of any such claim. At the time the manager visited the Gerber home, Mrs. Gerber, in his presence, in giving the reason why he left work said he was run down, could not do his work, and that she would rather have him at home on relief than working up there.

Under the rule stated in *Norris* v. *Industrial Commission,* supra the finding of the commission will not be disturbed unless certain conditions appear evidencing arbitrary or capricious conduct on the part of the Industrial Commission in making its findings and ignoring undisputed testimony which should have been believed. The commission is not required to believe the uncontradicted evidence unless " (b) there is nothing in the record which is intrinsically discrediting to the uncontradicted testimony." Here there is evidence which is discrediting to the uncontradicted testimony of Gerber as to the happening of the alleged accident on June 6th and also as to the effect on his heart. We shall refer to some of this evidence. At the time of the alleged accident, Gerber made no outcry and failed to say anything to the night watchman to the effect that anything unusual had happened, although the night watchman was the only man in the vicinity and was only 30 or 40 feet away. Gerber failed to tell any one connected with the plant that such an accident had happened until some months afterward, notwithstanding an opportunity was offered and invited when the manager called at his home to inquire why he had quit work without notifying anybody as to the reason. The explanation given by Mrs. Gerber was that he was run down, could not do the work he was doing, and she would

rather have him on relief than working at the plant. Notwithstanding Gerber was present, not anything was said about the strain or overexertion in lifting a box or that his then condition was caused by any such happening. The accident was alleged to have happened June 6, 1935, but no report thereof was made to the Industrial Commission or claim filed for compensation until January 30, 1936. During the time Gerber worked at the plant after the alleged accident, he made no complaint to any one, and his appearance, according to the testimony of fellow workmen, gave no indication that anything unusual had happened or that his condition was any different than it had been at other times. Gerber estimated the box he claims to have lifted in the hardening room weighed about 130 or 140 pounds. The manager of the plant had a box of the size described filled with ice cream and weighed. The weight was 73 or 74 pound.

Dr. W. R. Tyndale examined Gerber some months after the alleged accident to determine whether or not he was totally disabled for the purpose of claiming insurance benefits. Dr. Tyndale testified that Gerber told him nothing at that time about the alleged accident although he gave the previous history of his heart condition in 1931 and since. In view of this testimony, it cannot be said that there is nothing in the record which is intrinsically discrediting to the uncontradicted testimony of Gerber, and consequently we cannot find that the commission was arbitrary or capricious in refusing to accept Gerber's testimony at its face value. His testimony does not carry conviction to the reasonable mind. In view of this conclusion, it is unnecessary to say much with respect to the second phase of the question above stated. There is testimony from medical experts from which the commission could well find that even if the lifting of the box occurred as described, yet the present condition of the plaintiff was not caused or materially affected by the strain of such lifting. One of the doctors stated, "He was evidently unfit for heavy work since 1931 and the final decompensation of June, 1395, was the cumulative result

of all the over-exercising of the heart muscle during the preceding four years."

The order of the commission denying compensation is affirmed.

EPHRAIM HANSON, MOFFAT, WOLFE, and LARSON, JJ., concur.