(No. 7003.   May 13, 1942)

BESSIE ARANGUENA, Appellant, v. TRIUMPH MIN-
ING COMPANY, Employer, and STATE INSUR-
ANCE FUND, Surety, Respondents.

(126 Pac. (2d) 17)

James & James, for Appellant.

Frank L. Benson, for Respondents.

GIVENS, C.J.—Appellant, widow of deceased, Julian Aranguena, was by the Industrial Accident Board denied compensation for her husband's death on the theory that the same was not accidental.

Deceased was about 50 years old and had been working for the respondent mining company 4 years. He was a strong, vigorous, robust man, never having complained of pain in his heart or chest, and having missed only 3 days because of illness up until August 20, 1940, at which time he was laid off because of a broken ankle. The day of his death, October 9, 1940, was the first day he had returned to work after breaking his ankle. On this day deceased and one McPherson had gone to work at 6:30 p. m. on the 770 foot sub-level, about 2000 feet from the surface of the mine, some 500 or 600 feet from the main inclined shaft. Deceased was braking and operating the clutch of a tugger, which required about 25 to 30 pounds of pressure. At 10:30 deceased and McPherson ate lunch. They returned to work, deceased started coughing, said he felt as if he were going to throw up, walked about 15 feet from the tugger and vomited. McPherson went to him and found deceased on his hands and knees, acting

as if he couldn't get his breath, his eyes rolling back. He made no complaint, his face was not discolored, and he died immediately.

An autopsy disclosed an arterial sclerosis and a thrombosis in the right coronary artery, occluding the same about an inch from where the same comes from the aorta. The doctor performing the autopsy stated the thrombosis had been developing for some time, possibly a year. The death certificate gave as the cause of death this thrombosis and over-exertion following the convalescence from the fracture of the ankle. Another doctor was of the opinion the bad air and exertion were the precipitating cause of the fatal occlusion. A heart specialist called by respondent stated categorically in response to a hypothetical question that the fractured ankle, exercise, and bad air had nothing to do with contributing to or causing the death, but stated on cross-examination that while the bad air would cause a person to breathe faster, thus tending to prevent the occlusion of a coronary thrombosis, he would not place a person with coronary thrombosis where there was a shortage of oxygen, and men with arteriosclerosis should not work in a mine.

The board found: "that the air in said raise [where deceased was working] was quite warm and was deficient in oxygen and the men perspired quite freely while engaged in their work; that the ventilation in said raise was not very good" and in finding 5 that: "the death of said Julian Aranguena was caused by thrombosis of the coronary artery and that said disease was not caused, aggravated or accelerated by the work done by the said deceased on the 9th day of October, 1940."

The concluding fact, therefore, that the thrombosis was not caused, aggravated, or accelerated by the work was not a comprehensive finding or conclusion in that it did not cover the effect of the bad air, heat, or lack of ventilation.

Respondent contends the board's findings adverse to appellant upon disputed and contradictory facts, under the statute and the constitution, are binding upon this court. If supported by competent, substantial evidence, that is true. If not, it becomes a question of law; or, if there is a lack of substantial, probable evidence, there is

insufficient support for the order. The board having found that there was bad air, lack of ventilation, and that the workmen were sweating because of these conditions, whatever conflict may have existed in regard to this situation becomes of no importance. These findings stand.

Two doctors, one of whom performed the autopsy, concluded these conditions deleteriously affected the thrombosis or embolus and caused it to completely close the coronary artery. While the answers to the hypothetical questions of the other physician, who never saw the deceased, disputed this, the cross-examination devitalized this apparent conflict. The appropriate rule of law has thus been stated in *Fackenthall v. Eggers Pole & Supply Co.*, 62 Idaho 46 108 Pac. (2d) 300, at 302:

"We should not overlook the fact that sometimes there may be a difference between degrees of expert testimony and opinion evidence. The expert often testifies as to the effect or result of natural or scientific facts, which have been proven or demonstrated by him or by acknowledged leaders of his profession and which may not be known or fully apprehended by the layman unskilled in the profession of the particular expert. *Dougherty v. Milliken,* 163 N. Y. 527, 57 N. E. 757, 79 Am. St. Rep. 608; *Copenhaver v. Northern Pac. Ry. Co.*, 42 Mont. 453, 113 P. 467, 470. On the other hand, the expert may apply his scientific knowledge to a hypothetical state of facts and thereby express an expert opinion. It has also been held 'proper for a qualified expert witness to give his opinion as to whether certain assumed facts were the cause of a subsequent condition.' *Hayhurst v. Boyd Hospital,* 43 Idaho 661, 671, 254 P. 528, 530. There should, and there ordinarily will be, more weight given to the testimony of one who testifies from first hand knowledge than will be given to the one who testifies alone on a hypothetical state of facts. *Kelly v. Perrault,* 5 Idaho 221, 232-240, 48 P. 45; Note, 39 L. R. A. 333."

The board should have given the positive testimony of the doctor who performed the autopsy and saw deceased controlling weight, as against the negative, weakened, opinion testimony, and not having done so, the order is contrary to law. *Suren v. Sunshine Mining Co.*, 58 Ida.

101, 70 Pac. (2d) 399; *Evans v. Cavanagh,* 58 Ida. 324, 73 Pac. (2d) 83; *Nistad v. Winton Lumber Co.,* 61 Ida. 1, 99 Pac. (2d) 52; *Watkins v. Cavanagh,* 61 Idaho 120, 107 Pac. (2d) 155.

Cases closely in point are *Carroll v. Industrial Commission,* 69 Colo. 473, 195 Pac. 1097, where a person suffering from a heart ailment similar to the one involved herein, while pitching hay in excessive alfalfa dust, died. The same contentions were made as herein, but the board held the death was accidental. This case has been cited with approvel in *Aldrich v. Dole,* 43 Ida. 30, 249 Pac. 87; *In re Larson,* 48 Ida. 136, 279 Pac. 1087; *Ramsay v. Sullivan Mining Co.,* 51 Ida. 366, 6 Pac. (2d) 856; *Sullivan Mining Co. v. Aschenbach,* (Ida., 9th Cir., Dietrich) 33 Fed. (2d) 1; and in other jurisdictions by *Tintic Milling Co. v. Industrial Commission,* 60 Utah 14, 206 Pac. 278; *Ellermann v. Industrial Commission,* 73 Colo. 20, 213 Pac. 120; *Cherdron Const. Co. v. Simpkins,* 61 Utah 493, 214 Pac. 593; *Graybar Electric Co. v. Industrial Commission,* 73 Utah 568, 276 Pac. 161; *Hartford Accident & Indemnity Co. v. Industrial Commission,* 38 Ariz. 307, 299 Pac. 1026; *United States Fidelity & Guaranty Co. v. Industrial Commission,* 96 Colo. 571, 45 Pac. (2d) 895; *Industrial Commission of Colorado v. Wetz,* 100 Colo. 161, 66 Pac. (2d) 812; *Brown's Case,* 123 Me. 424, 123 Atl. 421; *Pace v. North Dakota Workmen's Compensation Bureau,* 51 N. Dak. 815, 201 N. W. 348; *Schirmer v. Cedar County Farmers Telephone Co.,* 139 Neb. 182, 296 N. W. 875; *Wright v. Louisiana Ice & Utilities Co.,* 19 La. App. 173, 138 So. 450; *Smith v. Incorporated Village of Sea Cliff,* 263 N. Y. S. 679.

(*Knock v. Industrial Accident Commission,* 200 Cal. 456, 253 Pac. 712, held that the exertion of walking over rough ground at a high altitude, following which death occurred from heart trouble similar to that involved herein, was accidentally occasioned, discussing at length the interpretation of conflicting views as involved herein, sustaining the pronouncement herein that there was not substantial evidence creating a conflict, followed by *Fogarty v. Department of Industrial Relations,* (Cal.) 269 Pac. 641, reaffirmed in 206 Cal. 102, 273 Pac. 791.

The above case was followed and approved in *In re Larson, supra; Beaver v. Morrison-Knudsen Co.*, 55 Ida. 275, 41 Pác. (2d) 605, 97 A. L. R. 1399; *Thoreau v. Industrial Accident Commission*, 120 Cal. App. 67, 7 Pac. (2d) 767; and such theory is further elaborated in *Nielsen v. Industrial Accident Commission*, 220 Cal. 118, 29 Pac. (2d) 852. This case also considered that testimony of the physician, who performed the autopsy and actually saw the deceased, that the conditions at the time of death accelerated and aggravated and brought to a lethal conclusion the thrombosis, was entitled to greater weight than the testimony of the expert not based upon anything except theoretical, hypothetical questions. Consequently, they are not on a parity. *Mark v. Industrial Accident Commission*, 29 Cal. App. (2d) 495, 84 Pac. (2d) 1071. Particular attention is called to *Blankenfeld v. Industrial Accident Commission*, 36 Cal. App. (2d) 690, 98 Pac. (2d) 584, at 587.

In *Nicholson v. Roundup Coal Mining Co.*, 79 Mont. 358, 257 Pac. 270, the court held that a miner subjected to extremely cold air in passing out of a mine suffered an accident where immediately his heart, though previously impaired, gave way, and that the same constituted an accident. The board herein, in failing to take into consideration, or at least in not making any specific finding with regard to the bad air, the heat, and the lack of ventilation, did not make a sustainable order. *Birdwell v. Three Forks Portland Cement Co.*, 98 Mont. 483, 40 Pac. (2d) 43.

The order is therefore reversed and the cause remanded with instructions to enter an award in favor of appellant on the ground that the only substantial, preponderating evidence in the record discloses that the conditions at the time of deceased's death at least so accelerated and aggravated the thrombosis as to constitute a compensable industrial accident.

Costs to appellant.

Budge, Morgan, Holden, and Ailshie, JJ., concur.