THOMAS D. DEE MEMORIAL HOSPITAL ASS'N et al.
v. INDUSTRIAL COMMISSION et al.

No. 6572.   Decided May 26, 1943.   (138 P. 2d 233.)

See 71 C. J., Workmen's Compensation, sec. 370; 28 R. C. L. 816 (8 Perm. Supp., 6240).

*F. A. Trottier,* of Salt Lake City, for plaintiffs.

*Grover A. Giles,* Atty. Gen., and *Joseph E. Evans,* of Ogden for defendants.

WOLFE, Chief Justice.

This case comes to this court on writ of certiorari to review an order of the Industrial Commission awarding compensation to one Bernhard Andersen. The facts out of which the controversy arose are not in dispute. The applicant was an employee of the Dee Memorial Hospital Association. His usual duties were taking care of the boiler room, filling the hopper of the stoker with coal when it needed it, pulling the clinkers and carrying them out and doing any other miscellaneous odd jobs which he was asked to do during his shift. On March 12, 1942, Andersen came to work at midnight. He looked over the boiler room and filled the hopper with coal. Between 30 minutes and an hour after his shift started he commenced to move some boxes which he had been instructed by his supervisor to move from one part of the basement to another. After he had moved approximately 12 boxes, which weighed from 50 to 100 pounds each, he suffered a sharp pain in his chest. He went to the boiler room

and rested for a while. The pain subsided but did not completely disappear. After a short rest he returned to his work of moving the boxes; as he worked the pain became worse and he again rested. He continued to alternately rest and work throughout the remainder of his shift. During the shift he loaded about 40 of these boxes on a hand truck and moved them some 300 feet. He also, in order to get to the boxes, had to move 28 one hundred pound sacks of fire clay. In addition, he tended to his regular duties about the boiler room.

After his shift ended at 8 a. m., he went home and rested until afternoon. He then went to see Dr. Strandquist, who made a diagnosis that applicant had a coronary heart disorder. Andersen was confined to the hospital for the following two months and to his home for the next four months.

The evidence discloses that the applicant was suffering from a heart disease prior to March 12, the night this so-called accident happened. However, the heart ailment did not interfere with the performance of his regular duties prior to that date. He had been employed by the Dee Hospital as a furnace man for about 12 years. He worked seven days a week and with the exception of a two weeks vacation in the summer, worked every week. He was apparently very consistent about going to work and lost very little if any time because of illness. Since the day following this alleged accident and continuing up to the date of the Industrial Commission hearing, the applicant has been totally disabled.

Dr. Strandquist and Dr. Olsen both testified that work or overexertion contributed to the coronary occlusion, and their testimony is uncontradicted. The Commission found that the applicant had "suffered an accident which arose out of, or in the course of, his employment, by reason of the fact that he was called upon to exert himself physically, greatly in excess of the requirements of his normal duties," and that this "accident" or "unusual exertion" aggravated a previously existing heart disease and brought on a heart attack and coronary occlusion, and resulted in his total dis-

ability from March 12, 1942, to the date of the hearing, September 14, 1942.

As we stated in *Graybar Electric Co.* v. *Industrial Commission*, 73 Utah 568, 276 P. 161, 162, ■

"It is no longer an open question in this state that, other necessary conditions being present, a pre-existing disease or other disturbed condition of the physical structure of the body, when aggravated or lighted up by an *accident*, is compensable under the act. *Tintic Milling Co.* v. *Industrial Comm.*, [infra]." (Italics added.) See, also, *Grasteit* v. *Industrial Comm.*, 76 Utah 487, 290 P. 764; *Gerber* v. *Industrial Comm.*, 91 Utah 479, 64 P. 2d 1281.

And, under the evidence and the findings of the Commission in the instant case, there can be no question but what the extra work or overexertion did aggravate a pre-existing heart ailment which resulted in a coronary occlusion. The real question involved in this appeal, therefore, is whether or not this extra work or overexertion constituted an "accident" within the meaning of Sec. 42-1-43, U. C. A. 1943.

That section provides:

"Every employee mentioned in section 42-1-41 who is injured * * * by *accident* arising out of or in the course of his employment * * * shall be entitled to receive, and shall be paid, such compensation for loss sustained on account of such injury." (Italics added.)

A rather comprehensive discussion of the term "accident" as used in compensation statutes may be found in the case of *Tintic Milling Co.* v. *Industrial Comm.*, 60 Utah 14, 206 P. 278, 23 A. L. R. 325. The court ■ quoted with approval from Honnold Work. Comp., Vol. 1, pp. 274-278 a definition of the term "accident" which has been subsequently cited by several Utah cases. According to Honnold:

"The word 'accident' refers to the cause of the injury, and it is here used in its ordinary and popular sense, as denoting an unlooked for mishap, or an untoward event, which is not expected or designed by the workman himself, as a physiological injury as a result of the work he is engaged in, an unusual effect of a known cause, a casualty.

It implies that there was an external act or occurrence which caused the injury or death. It contemplates an event not within one's foresight and expectation resulting in a mishap causing injury to the employee."

This same definition was quoted with approval by this court in the case of *Bamberger Coal Co.* v. *Industrial Comm.*, 66 Utah 203, 240 P. 1103, a case which is cited by the employer, Dee Hospital, in support of its contention that the award must be reversed. The facts of the instant case are very similar to those present in the Bamberger case and it is doubtful that the cases can be distinguished. In the latter case, we denied recovery. The facts disclosed that the deceased employee started work in the morning unloading a car of coal. While he was working someone made the remark that "this man will give out at the rate he is going on that coal." He continued to so work until about noon, at which time he went into the office of the employer apparently exhausted, complaining of pain and asking for assistance to get home. There was no evidence to show a fall, or a strain and nothing out of the ordinary happened to the deceased during the time he was unloading the car. The attending physician testified that he thought that the unloading of the car of coal and lifting big lumps was the "immediate cause" of the death. The court in applying to the facts of the case the principles laid down in the Tintic Milling case and the definition given by Honnold of the term "accident" stated:

"No showing is made that anything out of the ordinary happened to the deceased during the time he was unloading the car. Assuming, without so holding, that the statements to the truckman by Mr. Tullgren as he was being driven home that he had overexerted himself can be considered to have any probative value, that testimony nevertheless fails to show anything out of the ordinary or any accident or untoward or unexpected thing that happened during the work of unloading the car. No time or place is given which can be seized upon as showing anything unexpected or unusual happening during the course of the work."

Even though there appears to be no logcal basis for distinguishing the instant case from the Bamberger case on their facts, the Bamberger case is not controlling for it has been subsequently overruled. In the case of *Hammond* v. *Industrial Comm.*, 84 Utah 67, 34 P. 2d 687, 694, we reversed an order of the Commission which denied compensation under the following facts: The deceased was 51 years of age. He had been an employee of Salt Lake City as a watchman and patrolman looking after reservoirs and water supplies of the city for nine or ten years. Among other duties he was required to look after and clean reservoirs, weirs, and screens, etc., and patrol a portion of the canyon looking after the city water supply. On July 14, 1932, the deceased with two other men was cleaning out some reservoirs and weirs. The work was heavy and required a lot of lifting. In opening one weir the deceased was lifting hard and felt a sharp pain in his chest. As he worked on during the day the pain grew worse and he became weakened and ill. The following day he again continued his work but the pain got progressively worse. He died at 2 a. m. the morning of the sixteenth. One doctor concluded that the deceased "had strained his heart from a *prolonged* and *continued* effort" and that he had what is called a "heart collapse" of an "acute dilatation." Another doctor testified that the symptoms were those typical of coronary arterial occlusion. He also testified that if it was established that the deceased did have a strain and at the time of his "overexertion" he felt a pain within the region of the heart, the strain might be a contributing cause but not the primary cause of the death. The primary cause being the hardening of the arteries.

The plaintiff, Dee Hospital, contends that the Hammond case is distinguished from the instant case in that in the Hammond case there was a definite strain traceable to a particular lift on a weir in addition to continuous overexertion. In this regard the court stated:

"That strained effort or overexertion may cause an accidental injury or death for which compensation under our Industrial Act may

be awarded may not longer be doubted, and here is not controverted. That the deceased in the course of his employment at the reservoir engaged in rather strenuous *efforts* and overexertion is sufficiently and indisputably shown. \* \* \* Upon the whole record, the only reasonable or permissible inference is that the heart collapse of the deceased was occasioned by strained *efforts* and *exertions* exerted by him in the performance of his work at the reservoir." (Italics added.)

The opinion was thus based on the series of "efforts" and "exertions." The only distinguishable feature between the facts of that case and this might be in the degree of exertions. In both cases the injured employee was doing work of the same type usually done by him but the work was heavier than usual. Both had continuous overexertions. Both suffered a heart attack. Experts in both cases testified that the overexertion contributed to the disability or death. Both had pre-existing heart ailments which were aggravated by the overexertion. There appears to be no logical basis for distinguishing these cases.

However, it may be well to note that the Hammond case, supra, in holding that overexertion of this type could be considered an "accident" has possibly departed from the definition of "accident" quoted with approval by this court from Honnold Workmen's Compensation as set out above. It seems to treat the injury not as a result of an accident but as the accident itself. Although the result was unexpected, the work was of the usual type performed by these employees. It was heavier than usual—too heavy for men of their age and physical condition—but there was nothing unexpected or unusual in the work even though the result was unlooked for; there was no slipping or falling or external act or occurrence which caused the injury. Be that as it may, the Hammond case has not been overruled and is the present law of this State. Unless we now wish to overrule it, it must control this case and the award of the Commission must be affirmed.

The discussion in the much cited English case of *Fenton* v. *Thorley & Co., Ltd.,* [1903] A. C. 443, 34 Digest 266, 2264, in the House of Lords throws some light on this question.

It construed § 1(1) of the 1925 Compensation Acts which provides:

"If in any employment personal injury by accident arising out of and in the course of the employment is caused a workman"

his employer shall be liable to pay compensation.

It will be noted that this provision contains the phrase "Injury by accident." In discussing this provision Lord Macnaghten stated:

"I come, therefore, to the conclusion that the expression 'accident' is used in the popular and ordinary sense of the word as denoting an unlooked-for mishap or an untoward event which is not expected or designed."

(This language was quoted with approval by this court in the case of *Tintic Milling Co.* v. *Industrial Comm.*, supra.) Earlier in the judgment Lord Macnaghten stated that the words "by accident" were introduced parenthetically, as it were, to qualify the word injury confining it to the certain class of injuries and excluding other classes such as injuries by disease or injuries self-inflicted by design.

In discussing the Fenton v. Thorley & Co. case, Romer, L. J. in *Ormond* v. *C. D. Holmes & Co., Ltd.*, in the English Court of Appeals (2 A. U. E. R. 795) 1937 stated:

"If a man should die suddenly of heart disease without any contributing cause, no one would say that his death was accidental or due to an accident. In some cases, however, incapacity is caused by a disease in conjunction with a contributory cause. A man, for instance, may be suffering from a disease; his death, however, *from the disease may be accelerated by some particular though not necessarily unusual act of exertion.* In those cases the death or incapacity can properly be said to be caused by an accident, and where the contributing cause is furnished by and in the course of the injured workman's employment, he is entitled to compensation under the act." (Italics added.)

Another land mark case in the development of workmen's compensation laws in England is the case of *Clour, Clayton & Co.* v. *Hughes*, [1910] A. C. 242, 3 B. W. C. C. 275, 34

Digest 273, 2316. In summarizing the facts of the case, Lorenburn, L. C. stated:

.“In this case a workman, suffering from an aneurism is so advanced a state of disease that it might have burst at any time was tightening a nut with a spanner, when the strain, quite ordinary in this quite ordinary work, ruptured the aneurism, and he died.”

The county judge found that the strain contributed to the death even though it was an ordinary strain caused by doing his work in the ordinary way. The House of Lords (Lord Atkinson and Lord Shaw dissenting) held that the injury was accidental within the meaning of the Act and allowed recovery. Lord Loreburn, L. C. in arriving at this conclusion stated:

“I do not think we should attach any importance to the fact that there was no strain or exertion out of the ordinary. It is found by the County Court Judge that the strain in fact caused the rupture, meaning, no doubt, that if it had not been for the strain, the rupture would not have occurred when it did. If the degree of exertion beyond what is usual had to be considered in these cases, there must be some standard of exertion, varying in every trade. Nor do I think we should attach any importance to the fact that this man's health was as described. If the state of health had to be considered, there must be some standard of health, varying, I suppose, with men of different ages. *An accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of health.* (Italics added.)

“It may be said, and was said, that if the Act admits of a claim in the present case, everyone whose disease kills him while he is at work will be entitled to compensation. I do not think so, and for this reason. It may be that the work has not, as a matter of substance, contributed to the accident, though in fact the accident happened while he was working. In each case the arbitrator ought to consider whether, in substance, as far as he can judge on such a matter, the accident came from the disease alone, so that whatever the man had been doing it would probably have come all the same, or whether the employment contributed to it. In other words, did he die from the disease alone or from the disease and employment taken together, looking at it broadly? Looking at it broadly, I say, and free from over nice conjecture: Was it the disease that did it or did the work he was doing help in any material degree?”

This case of *Clour, Clayton & Co.* v. *Hughes,* supra, has been cited in numerous later cases and unquestionably represents the present state of the law in England.

See, also, *James* v. *Partridge Jones,* [1933] A. C. 501, 26 B. W. C. C. 277, in which Lord Buckmaster said that it was not necessary in a case, where it is proved that the work contributed to the death, to point to a specific injury resulting from a specific act.

An article by Francis H. Bohlen entitled "The Drafting of Workmen's Compensation Acts," 25 Harvard Law Review 328, is often quoted with approval by the courts. He sums up the holding of the British courts in workmen's compensation cases as follows:

"Since the case of Fenton v. Thorley nothing more is required than that the harm that the plaintiff has sustained shall be unexpected. It is no longer required that the causes external to the plaintiff himself, which contribute to bring about his injury, shall be in any way unusual; it is enough that the causes, themselves known and usual, should produce a result which on a particular occasion is neither designed nor expected. The test as whether an injury is unexpected and so if received on a single occasion occurs 'by accident' is that the sufferer did not intend or expect that injury would on that particular occasion result from what he was doing. * * * The element of unexpectedness inherent in the word 'accident' is sufficiently supplied either if the incident itself is unusual, the act or conditions encountered abnormal, or if, though the act is usual and the conditions normal, it causes a harm unforeseen by him who suffers it."

The English decisions have been cited with approval in several American jurisdictions. The statement of the English law by Bohlen was recently quoted with approval and followed by the Supreme Court of New Mexico in the case of *Stevenson* v. *Lee Moor Contracting Co.,* 45 N. M. 354, 115 P. 2d 342, 349. In the Stevenson case the New Mexico court also cited *Carroll* v. *Industrial Comm.,* 69 Colo. 473, 195 P. 1097, 19 A. L. R. 107, in which the Colorado Court stated:

"Our statute used the expressions 'personal injury or death accidentally sustained' and 'injury proximately caused by accident' in providing for what injuries or deaths compensation shall be allowed.

By the term 'injury' is meant, not only an injury the means or cause of which is an accident, but also an injury which is itself an accident. The expressions above quoted are the equivalent of 'injury by accident,' which is frequently used in the decisions. The word 'by' may mean 'through the means, act, or instrumentality of.' 9 C. J. 1109. Therefore 'injury by accident' and 'injury caused by accident' are terms or expressions which can be used interchangeably."

In *Hentz* v. *Janssen Dairy Corp.*, 122 N. J. L. 494, 6 A. 2d 409, the New Jersey Court of Errors and Appeals in discussing the same phase of this matter followed the English decisions and cited recent decisions of House of Lords.

In *Lumbermens Mut. Cas. Co.* v. *Griggs,* 1940, 190 Ga. 277, 9 S. E. 2d 84, the court cites with approval recent English decisions including *Fenton* v. *Thorley,* supra, and *Clour* v. *Hughes,* supra. The court affirmed a compensation award to an employee who suffered a cerebral hemorrhage immediately after helping others unloading a car of cement. The cement sacks weighed 94 pounds. He worked about 40 minutes and suffered the hemorrhage which resulted in the injury complained of immediately after completing the job. A physician testified that the applicant before the stroke was suffering with arteriosclerosis and high blood pressure and that the exertion increased his blood pressure to such an extent that it caused a rupture of a blood vessel resulting in the injury.

In *Gilliland* v. *Ash Grove Lime & Portland Cement Co.,* 104 Kan. 771, 180 P. 793, 794 (cited with approval in *Tintic Mill Co.* v. *Industrial Comm. of Utah,* supra), the employment required the workman to break rock with a 16 pound sledge and to load the rock into a car. At noon he was in good health and spirits and ate a hearty lunch. In the afternoon while working, and shortly after he was seen beating a large rock with the sledge, he suffered a pulmonary hemorrhage from which he died. He had worked for three years sacking cement in an exceedingly dusty place and his blood vessels had been thus weakened. The court in holding that the injury was the result of an accident stated:

"When last observed, the deceased was working in the manner habitual to the employment. The fact remains, however, that an extraordinary and unforeseen thing suddenly and unpremeditatedly occurred, and presence of all the essential attributes of accident cannot be gainsaid."

In *Giguere* v. *E. B. & A. C. Whiting Co.*, 107 Vt. 151, 177 A. 313, 98 A. L. R. 196, the court allowed compensation to an injured employee under the following facts: The employee for the past year had been lifting trays of fiber from a three-foot bench onto the floor. The trays weighed from 40 to 65 lbs. After lifting about 15 trays the workman suffered a sharp pain on his left side which was later diagnosed as a hernia. He worked the remainder of the day, although the pain continued. The Vermont Workmen's Compensation Act provided that an injury suffered by a workman must have an accidental origin to be compensable, and must arise out of and in the course of his employment. The workman was found to have been doing his usual work in the usual and regular way. There was nothing out of the ordinary. After reviewing a number of English and American cases the court reversed the commissioner's order and allowed compensation.

In discussing the case of *Brown* v. *Lumbermen's Mutual Casualty Co.*, 49 Ga. App. 99, 174 S. E. 359, the Georgia court in *Lumbermens Mut. Casualty Co.* v. *Griggs,* supra [190 Ga. 277, 9 S. E. 2d 90], stated:

"* * * The facts showed that the employee in the course of his employment merely stooped to pick up a tool, and without slipping or other external mishap suffered an injury to his knee; and it was held that the injury was compensable under our statute."

In *Knock* v. *Industrial Acc. Comm.*, 200 Cal. 456, 253 P. 712, the California Supreme Court allowed compensation under the following facts: The deceased employee had been employed for several years on a ranch. His employment required him to leave the ranch, which was in a low altitude on lower reaches of Sacramento River, and to go to inspect

some lands which were at an altitude of some 3,300 feet. While making the inspection he was required to walk a considerable distance over rough country and at considerable exertion. He began to feel ill and returned to the starting point and left for home. He died en route to his home. Experts testified that he had died from acute dilatation of the heart caused by overexertion at this high altitude. The court reversed the order of the commission and directed that compensation be awarded.

In *Stringer* v. *Kansas Line Mining Co.*, 114 Kan. 716, 220 P. 168, many authorities being cited, the court held that the extra exertion used by the workman in sawing heavy timbers thus causing a hemorrhage was an accident under the statute.

In *Harmon* v. *Larabee Flour Mills Co.*, 134 Kan. 143, 4 P. 2d 406, compensation was awarded in a case where an employee, who was not used to heavy work, secured employment in a flour mill and suffered a heart attack while lifting heavy sacks of flour. The court stated that where a physical structure of the man gave way under the stress of his usual labor, the accident was compensable.

In *Hill* v. *Etchen Motor Co.*, 143 Kan. 655, 56 P. 2d 103, compensation was allowed to an employee who suffered a coronary thrombosis as a result of a strain in working on mechanics of an automobile. The workman testified that he did not slip or that the nut upon which he was pulling did not suddenly break loose. He suffered a previous heart attack on the preceding day while doing this same type of work. The court held that it was a compensable injury.

We are not required in the case at bar to go so far as the English cases have gone for here we have a commission finding supported by the evidence that the applicant suffered the heart attack while engaged in *unusually* heavy work which was greatly in excess of his ordinary duties. The expert medical testimony adduced clearly established the fact that the heart attack was directly attributable to this extra work or overexertion. We do not

intend to open the door to recovery for all injuries of this type merely because they occur on the premises of the employer during the hours of the employment. In such cases the commission would be warranted in requiring clear and convincing proof that the claimed injury resulted because of the extra work or overexertion; merely showing a possibility of such a cause and effect will not suffice. On the authority of the Utah case of *Hammond* v. *Industrial Comm.*, supra, which we do not think is distinguishable from the case at bar, and the other cases cited, which take an even more extreme position, we hereby affirm the award of the Industrial Commission.

McDONOUGH and MOFFAT, JJ., and WADE, J., pro tem, concur.

LARSON, Justice (concurring).

I concur in result affirming award of the Commission.