ROBERTSON et al. v. INDUSTRIAL COMMISSION et al.

No. 6820.   Decided November 21, 1945.   (163 P. 2d 331.)

See 71 Workmen's Compensation, sec. 912.

*Gaylen S. Young,* of Salt Lake City, for plaintiffs.

*Grover A. Giles,* Atty. Gen., for defendants.

*F. A. Trottier,* of Salt Lake City, for State Insurance Fund.

McDONOUGH, Justice.

Certiorari to review order of Industrial Commission denying application for an award.  The fact are not in dispute.

Eli A. Robertson was an employee of Colorado Animal By-Products Company for several years prior to his death

on September 26, 1943. He had never lost any time by reason of illness. On the day in question he left his home at Spanish Fork in apparently good health, and entered the plant of his employer. He and one James Francom wheeled 3 or 4 loads of coal in a wheelbarrow into the furnace room, which consumed about a half-hour. They then dragged and pulled a large dead horse onto a skinning block by means of a mechanical winch. They hooked a cable onto one or both of the fore feet to raise the carcass partially into the air, to facilitate skinning operations.

Mr. Francom worked on one side and the deceased was skinning on the other side. The carcass weighed 1800 pounds. The plant received such a large carcass only occasionally. Sometimes it was quite an effort to pull the horse over on its back. The floor was slippery and wet. The deceased generally braced himself when he tried to pull on one of the legs of the carcass to turn it over or toward him. According to Francom, a fellow worker, the only eyewitness, at the time in question Robertson took hold of one of the hind legs of the carcass after bracing himself and pulled on it, exerting himself quite heavily. Francom observed that Robertson's juglar vein swelled up and that he turned red and flushed in the face, with purple coloring around the mouth "like he was in awful distress," and an expression of pain came on his face. He released his hold on the leg of the horse and exclaimed, "Has Andy got the cooker open; I am just suffocating." He then went out of doors. Francom presently came out to see what was the matter. He found Robertson lying down leaning on his elbow. Robertson was still flushed, and putting his hand on his chest stated that his chest pained him. He stated that, "I about passed out up there." About 30 minutes later he drove home. He told Francom he thought he could manage to drive home without assistance.

When Robertson arrived at his home his daughter observed that he looked pale. He complained of severe pains in his chest and down his arms. A doctor was called, but Robertson died before the doctor arrived. No autopsy was

performed. The physician who reported the facts for the death certificate stated that cause of death was unknown, but from natural causes.

Application was made to the Industrial Commission for compensation for death, on the ground that the deceased suffered an acute heart affliction resulting from over-exertion while pulling on the leg of a dead horse, during the course of his employment.

While the two physicians who testified at the hearing stated they were uncertain as to the exact cause of death, Dr. J. W. Hagan testified,

"it was a heart condition; in my opinion he had coronary occlusion,"

and that such opinion was based upon the symptoms described to him; that such condition occurred several hours prior to death. This doctor was acquainted with deceased but had never treated him. He further testified that in his opinion the attack came on suddenly. In response to a hypothetical question, Dr. Merrill L. Oldroyd, on the basis of the testimony of other witnesses stated that,

"the only way to determine the cause of death would be by autopsy, but I would assume he sustained an acute heart affliction."

When asked whether he had an opinion as to the cause he stated,

"I would assume it was brought on by overexertion if it came on suddenly while he was at work."

He further testified that,

"assuming that the man had never had any illness, and if he had had an examination and was found to be normal, I would assume it would be the overexertion that caused his heart condition."

Since there was no conflict in the testimony, we direct our attention to the decision of the commission, and the reasons stated therein for denying the award. The commission stated that both doctors testified that they thought death may have been caused by a coronary occlusion,

"but it was made quite clear by both Dr. Hagan and Dr. Oldroyd that they were in substantial doubt as to the cause of death, and that the cause could only have been accurately determined by an autopsy which the widow did not desire to have performed."

The evidence does not show that anyone suggested to the widow that an autopsy be performed. Furthermore, the hereinabove quoted statements of the doctors reveal that while an autopsy might have accurately disclosed the precise cause of death, both doctors were of the opinion that the deceased suffered an acute heart affliction shortly before his death.

We quote further from the decision of the commission:

"Was the exertion sufficient to justify a finding that the heart attack or whatever it was that caused the death of decedent, was the result of the exertion? We think not. A cursory reading of the testimony of Mr. Hicken might lead one to believe that deceased actually completely turned over a dead horse weighing 1800 pounds. We must admit, that if deceased in fact reached over, took hold of a hind leg and pulled the horse over, he certainly must have exerted himself very substantially. However, a more careful reading of the testimony indicates rather clearly that deceased did not exert himself to any appreciable extent. What he did was take hold of one of the hind legs of the horse and pull it toward him so that he could skin the inner side of the leg. This we think would not require sufficient exertion to bring on a heart attack.

"* * * In the instant case, the testimony, such as it is, would require a finding that the deceased Robertson had a normal heart. We are therefore requested to find that ordinary exertion caused a coronary occlusion in a normal heart. This we are unable to do."

Our first task is to determine whether the evidence shows just ordinary exertion, and whether the testimony of witnesses is properly reflected in the decision. As to the medical testimony, it seems clear to us that the commission misconceived the import thereof. As to the facts relating to exertion, we quote from the testimony of Francom who was the only eyewitness. After explaining some of the preliminaries to skinning operations, Francom testified that the deceased took hold of the hind leg of the carcass to

"pull him kind of over onto his back when he said 'Has Andy got one of those cookers open?' * * * He was flushed in the face and purple around the mouth."

"Q. Explain what he was doing; what physical symptoms you observed with respect to color and distress, and what he said to you. You said he was skinning a horse and he took hold of the hind legs? A. Took hold of a hind leg to straighten it up so he could skin down the hind leg.

"Q. Would you say whether he exerted himself heavily? A. He could have done.

"Q. It is your opinion he did? A. Yes.

"Q. Had he completed the straightening of the horse up; and then what happened? A. He just let go of the horse and said 'Has Andy got that cooker open?' I looked at him and he was purple around the mouth like he was in awful distress.

"Q. Did he say anything about having difficulty in breathing? A. No.

"Q. Did he appear to have difficulty in breathing? A. Yes, he did."

On cross-examination Francom testified that this particular horse was an unusually large horse; that he had worked on horses before that large, but had difficulty in doing so, although nothing ever happened before.

"Q. Was there any more strain on this particular horse than there was on any other large horses you had? A. I could not say as to that. He was laying kind of over on the floor and he wanted to pull him on his back like and open up that leg and skin down the leg.

*       *       *       *       *

"Q. So far as pushing or moving this horse is concerned there was nothing occurred in doing that which was anything other than the ordinary expected condition as you saw it? A. Yes; he just exerted himself a little bit more than he had on any other.

"Q. How do you know that? A. Because I seen him brace himself to pull the horse.

"Q. Didn't he often brace himself to pull a horse? A. Yes, usually would.

"Q. Did he brace himself to pull that horse during this same operation before? A. Yes."

Then on redirect examination Francom testified:

"Q. I think you stated, Mr. Francom, that he seemed to exert himself quite heavily? A. Yes, because he was a large horse."

Unfortunately, the record is silent as to the approximate angle of the carcass, which fore foot was suspended and the angle of the hind leg on which Robertson pulled, and with reference to which objects he braced himself. Inasmuch as the commission has not questioned the credibility of any of the facts testified to by Francom (although by inadvertence the commission mentioned the name of Hicken instead), and the commission merely attempted to summarize what Francom said, we must assume that the commission believed his testimony. The commission also concluded that

"if the deceased in fact reached over, took hold of a hind leg and pulled the horse over, he certainly must have exerted himself very substantially."

The commission concluded that the testimony of Francom does not show any substantial exertion. With such conclusion we are unable to agree. It might be that if there were a more complete record of the physical factors as to the position of the carcass, the angle of the leg on which decedent pulled, the evidence of unusual exertion now appearing in the record would be either strengthened or weakened or even negatived, but as the record now stands, there is evidence that Robertson braced himself to pull on this large carcass, and that the unusual size of the dead animal necessitated greater exertion than usual.

The commission also concludes that the evidence would require a finding that Robertson had a normal heart and that ordinary exertion could not result in a coronary occlusion. Since the factual premises—ordinary exertion—is not supported by the record, the conclusion that he did not have a coronary occlusion arising out of the course of his employment, cannot stand. The medical testimony likewise not having been questioned by the commission, must be

considered in the light of the testimony as actually given. There was no conflict in the medical testimony. Both doctors were of the opinion that from the symptoms noted, the deceased suffered an acute heart affliction, one of them specifying a coronary occlusion. Doctor Oldroyd expressed the opinion that the heart affliction was brought on by overexertion if it came on suddenly while the decedent was at work. There can be no question about the fact that it came on suddenly while decedent was pulling on the leg of the horse.

In its decision the commission quotes the following from *Thomas D. Dee Memorial Hospital* v. *Industrial Commission,* 104 Utah 61, 138 P. 2d 233, 238:

"We do not intend to open the door to recovery for all injuries of this type merely because they occur on the premises of the employer during the hours of employment. In such cases the commission would be warranted in requiring clear and convincing proof that the claimed inury resulted because of the extra work or overexertion; merely showing a possibility of such a cause and effect will not suffice."

In this case there was more than a mere possibility; there was proof that the symptoms were first noticed by a fellow-employee while Robertson was pulling on the hind leg of an unusually large and heavy carcass. It is not denied that Robertson died shortly after he arrived at his home, and that the opinion of the doctors was that he died of a coronary occlusion or at least from an acute heart affliction. Lack of certainty as to the precise type of heart affliction is not of controlling importance. The evidence appears to us to be undisputed that the size of the dead horse required more than the usual exertion to turn or move it; that decedent braced himself and was pulling on the hind leg of the animal when he manifested great distress which was visible to his fellow employee.

In many respects this case is similar to *Hammond* v. *Industrial Commission,* 84 Utah 67, 39 P. 2d 687, in which we reversed an order of the commission denying an award. Hammond was required to do considerable lifting in clean-

ing weirs and screen in connection with his employment at a city reservoir. In opening one weir he felt a sharp pain in his chest. He continued to work, but the pain increased and he became too ill to work. Two days later he died. It appeared that the deceased had suffered some hardening of the arteries, and that overexertion in his work caused a prolonged and continued strain on his heart, and he had a "heart collapse." True, in such case the evidence showed more sustained overexertion than is here evidenced. The *Hammond* and *Dee Hospital* cases are the law in this jurisdiction. They establish that where a person engaged in the duties of his employment suffers an internal injury from overexertion or unusual strain in the performance of those duties, resulting disability or death is compensable. An acute heart affliction caused by overwork, unusual strain or overexertion while the employee is acting in the course of his employment, strictly speaking is an internal injury, but it is nevertheless an accident. Internal injury resulting from accident is compensable if it results in either disability or death.

It appears that the decision of the Industrial Commission was based upon a misapprehension of the facts and also upon a misinterpretation of the *Dee Hospital* case. The decision and order of the commission are therefore vacated.

Costs to plaintiffs.

TURNER, J., concurs.

WADE, Justice (concurring with the result).

I concurr with the result. I am satisfied that from the evidence the commission could not reasonably find that the exertion of the deceased in the course of his employment was not a contributing cause of the ailment which caused his death. Such a finding would be contrary to all the medical opinions in the case, and it is clear from all the evidence that the deceased was substantially exerting himself when the definite attack occurred.

I am not, however, completely satisfied that from the evidence it would be unreasonable for the commission to find that deceased was not exerting himself beyond the usual requirements of his work. The evidence is not in dispute and the question is what inferences may be reasonably drawn therefrom. I think the evidence requires a finding that the deceased was substantially exerting himself at the time he became ill but not necessarily beyond the usual requirements of his work. Thus the question is presented whether in a case of this kind, in order for the injury to be accidental, the exertion which contributes in causing the injury must be in excess of the usual requirements of the work which the injured is ordinarily required to perform. In my opinion no such requirement is necessary.

In *Dee Memorial Hospital* v. *Industrial Commission,* 104 Utah 61, 138 P. 2d 233, we pointed out that there was unusual exertion; we cited cases both English and American which held that unusual exertion was not necessary, and concluded that in that case we did not have to go as far as those cases to sustain the decision of the commission.

I can see no reason why an injury caused by unusual exertion is any more accidental than one caused by the ordinary exertion required by the regular work of the job. We have repeatedly quoted with approval Honnold Work. Comp., Vol. 1, pages 274-278, where the word "accident" is defined as follows:

"The word 'accident' refers to the cause of the injury, and it is here used in its ordinary and popular sense, as denoting an unlooked for mishap, or an untoward event, which is not expected or designed by the workman himself, as a physiological injury as the result of the work he is engaged in, an unusual effect of a known cause, a casualty. It implies that there was an external act or occurrence which caused the injury or death. It contemplates an event not within one's foresight and expectation resulting in a mishap causing injury to the employee."

There is no requirement of that definition which is not as fully met where the exertion is only that which is usually required as where unusual exertion is put forth, provided

the exertion is at least a contributing cause of the injury. The cases which hold to the contrary seem to me to say in substance that unless the injury is caused by the exertion there can be no accident and that without unusual exertion the injury cannot be caused thereby. The latter conclusion is obviously erroneous because the rule as laid down is not that the exertion be unusually strenuous but that it be more strenuous than that usually required of the employee in the course of his employment. A job may usually require such strenuous exertion that it will break the body of an ordinary person of even of the strongest of men.

To my mind the weight of authority and the best reasoned cases hold that an accident arises out of the employment when the required exertion producing the injury is too great for the man undertaking the work, whatever the degree of exertion or the condition of the man's health, provided that the exertion is either the sole or a contributing cause of the injury. Injury and Death under Workmen's Compensation Laws by Horowitz, pages 88 and 89; *Griffin's Case,* 315 Mass. 71, 51 N. E. 2d 768; *Lumberman's Mutual Casualty Co.* v. *Griggs,* 190 Ga. 277, 9 S. E. 2d 84; *Brown's Case,* 123 Me. 424, 123 A. 421, 60 A. L. R. 1293; *Northwest Metal Products, Inc.* v. *Department of Labor,* 12 Wash. 2d 155, 120 P. 2d 855; *Cavanaugh* v. *Murphy Varnish Co.,* 130 N. J. L. 107, 31 A. 2d 759; *Peterson* v. *Safeway Stores,* 158 Kan. 271, 146 P. 2d 657; *Jones* v. *Town of Hamden,* 129 Conn. 532, 29 A. 2d 772; *McCormick Lumber Co.* v. *Department of Labor,* 7 Wash. 2d 40, 108 P. 2d 807; *Duff Hotel Co.* v. *Ficaro,* 150 Fla. 442, 7 So. 2d 790; *Hardware Mutual Casualty Co.* v. *Sprayberry,* 195 Ga. 393, 24 S. E. 2d 315.

LARSON, Chief Justice (dissenting).

I dissent. The real question is: Was the coronary occlusion from which the workman died brought on by overexertion at his work on the morning of his death? The subsidiary question, the one presented to us on this review is: Was the commission required as a matter of law

to answer the first question in the affirmative? The testimony shows the following facts: On the morning of September 26, 1943, Robertson went to work at his regular place of employment; he was apparently in good health; for about thirty minutes he performed the kind of work he regularly did; that there was a dead horse, larger than the usual size, to be skinned; that while skinning this animal he lifted or pulled on one hind leg; that while so engaged he suffered a coronary occlusion; that shortly thereafter he died from the heart attack. The record is distinctly inconclusive as to degree of exertion exerted by Robertson in pulling on the leg of the carcass; the medical testimony, strictly hypothetical, stated,

"I would assume it was brought on by over-exertion if it came on suddenly while he was at work."

But in arriving at an answer to the first question posed above, we find three gaps in the evidence—two of which, including the last, must be filled before the question can be answered. Can exertion of the kind and degree usually and regularly experienced by the workman in the course of his employment produce a coronary occlusion which is compensable? If not, was the exertion in this so unusual as to duration or intensity that it could produce a coronary occlusion? Was the coronary occlusion in this case the result of exertion of the work being performed? Actual testimony as to each necessary fact is not required so as to make every link in the evidentiary chain appear in the evidence. Some facts, while not testified to, may reasonably appear not in but from the testimony. A fact, missing in the narration may properly be inferred to exist, where its existence is reasonably necessary to account for the links in the chain thereafter, or to harmonize the known and established facts; to complete the evidentiary Mosaic which without such fact would not be understandable or explainable. The facts required to fill the above mentioned gaps in the evidentiary chain are facts which may be inferred from the facts in evidence. The prevailing opinion of Mr. Justice Mc-

DONOUGH takes the view that the commission was bound to infer the facts (a) that the exertion was unusual, and (b) that such unusual exertion caused the occlusion. While the commission may very well have drawn such inferences, I cannot say they were compelled to do so, that the failure to infer such facts show an arbitrary and unreasonable attitude of mind. The disregard of facts in evidence is quite a different state of mind from the failure to infer or conclude that one fact must exist because another fact does exist. The fact that one has a mother may well require the conclusion that he also has a father, but it does not require any conclusions as to the size, age, or race of the father. Yet, to my mind this is what the opinion does. I must therefore dissent.

I add one other thought in view of a comment in the opinion of Mr. Justice WOLFE. I can see many good reasons why the rule should be that if an accident arises in the course of employment, that is, while the workman is actually performing his labor, it should be presumed to arise out of, to be a result of, the employment until the contrary is made to appear. Especially would it seem a salutary rule when the workman died and is unable to give his version. Where one is injured while actually at work why should not a causal relationship between the work and the injury be assumed until the contrary is shown. This seems more comportable with the purpose of the law, that of having the workman viewed as a part of the industrial machinery or set up and to be taken care of on that basis. A fuller development of this view will be found in the opinions of the writer in *Johnson* v. *Cudahy Packing Co.,* 100 Utah 399, 115 P. 2d 794.

WOLFE, Justice (dissenting).

I have no difficulty with the concept that an internal failing brought on by exertion in the course of the employment is an industrial accident within the meaning of Sec. 42-1-43, U. C. A. 1943. We have so held many times. In

*Cherdron Construction Company* v. *Simpkins,* 61 Utah 493, 214 P. 593, 596, the applicant, while pushing a wheelbarrow full of cement up a 13% grade, slipped and in attempting to hold the load strained himself and suffered a mitral heart lesion. In sustaining the commission's award - we said:

"In view of the authorities above referred to, and others which we have examined, we are of opinion that the decided weight of authority, under statutes similar to ours, is to the effect that strained effort or over-exertion may cause an accidental injury for which compensation will be allowed."

We went on to hold that:

"* * * the underlying principle seems to be that the injury must happen suddenly, undesigned and unexpected, and at a definite time and place."

Fastening upon this principle—that the injury must happen suddenly at a definite time and place—we set aside an award by the commission in *Bamberger Coal Co.* v. *Industrial Commission,* 66 Utah 203, 240 P. 1103. There the employee had been unloading coal from a railroad car. There was evidence that he exerted himself heavily and that thereafter he suffered pains in his chest. He died within twenty-four hours. The commission made an award. We reversed holding that there was no evidence that anything out of the ordinary had happened. That no time or place was shown which could be seized upon as showing anything unexpected or unusual happening in the course of the employment.

In *Hammond* v. *Industrial Commission,* 84 Utah 67, 34 P. 2d 687 (also involving a heart attack from overexertion), the opening wedge was driven clearing the way for a definite holding in *Thomas D. Dee Memorial Hospital* v. *Industrial Commission,* 104 Utah 61, 138 P. 2d 233 that it was not necessary that there be one definite time or place which could be singled out as the time and place of the accident.

Reaffirming the Hammond case, we held in *Columbia*

*Steel Company* v. *Industrial Commission*, 92 Utah 72, 66 P. 2d 124, that the commission had correctly made an award to an employee who suffered a heart attack as a result of severe jolting and jarring while riding on a tractor in the course of his employment. In this latter case there was no definite time or place which could be pointed to as the time and place of the accident. It was a steady jolting and jarring from which the employee sustained a rupture or dissecting aneurysm of the aorta which rapidly dissected and caused his death.

In *Gerber* v. *Industrial Commission*, 91 Utah 474, 64 P. 2d 1281 and *Offret* v. *Industrial Commission*, 91 Utah 486, 64 P. 2d 1284, decided on the same day, though affirming the commission in its order denying compensation, we reaffirmed the concept that exertion can cause an internal failing which will be properly considered to be an accident within the meaning of Section 42-1-43.

The same principle was involved in *Southern Pacific Co.* v. *Industrial Comm.*, 96 Utah 510, 87 P. 2d 811, where the deceased employee was found to have died from a heart attack after having been pinned to a wall by a heavy sheet of metal which overbalanced and came onto him suddenly. See also *Continental Baking Co.* v. *Industrial Comm.*, 92 Utah 438, 69 P. 2d 268, where we upheld an award to an employee where a strain in lifting resulted in a hernia. *Peterson* v. *Industrial Comm.*, 83 Utah 94, 27 P. 2d 31; *Graybar Electric Inc.* v. *Industrial Comm.*, 73 Utah 568, 276 P. 161; *McEwan* v. *Industrial Comm.*, 61 Utah 585, 217 P. 690.

In *Thomas D. Dee Memorial Hospital* v. *Industrial Comm.*, 104 Utah 61, 138 P. 2d 233, we were not troubled so much by the question as to whether an internal failing could be treated as an accident within the meaning of the act. The primary problem was whether or not the internal failing must be sudden so that one time, place and cause of the failing can be definitely identified. We concluded that if the internal failing could be definitely traced to the over-exertion, that is, an exertion beyond that which his usual

employment called for, it was not necessary for the applicant to point to a specific time, place and event, but we made it clear that in so extending the principle that the untoward event need not be sharply attributable to a definite physical act, the proof should be clear and convincing that it was attributable to the overexertion. The holding in this regard finds support in the *Hammond case*, supra, and in *Columbia Steel Co.* v. *Industrial Comm.*, supra. If the *Bamberger Coal Co.* v. *Industrial Comm. case*, supra, had not already been overruled by the *Hammond case*, it was overruled by the *Dee Memorial Hospital case*.

In view of our many decisions, as noted above, we need not now re-examine the chain of reasoning through which we have come to treat internal failures as accidents within the meaning of the Act. The language of the Act, Sec. 42-1-43, U. C. A. 1943, would justify a holding that the elements, looking backward, were (1) disability or death, (2) injury, (3) accident, (4) in the course of or arising out of the employment. Our holdings have, by treating the internal failing as the accident, lumped numbers two and three together. The injury and the cause that produced it are, in an internal failing, ofttimes so closely related as to appear to be a unit occurrence. A strain and an injury— cause and effect—that appear as one. The strain itself which causes the trauma and the trauma are in the predecessor— cause and successor—effect relationship so that the strain appears to be the injury. Where there is intended exertion or overexertion which appears to have caused the failing there may be no unexpected event which caused injury, but as noted in *Handley* v. *Mutual Life Ins. Co. of N. Y.*, 106 Utah 184, 147 P. 2d 319, 152 A. L. R. 1278, an unexpected and untoward result is ofttimes itself denominated the accident.

Thus where exertion or overexertion in the course of the employment causes disability or death, I agree that compensation should be allowed. Here, however the Commission found that the evidence did not establish that the heart attack and resulting death were caused by the exertion.

We have time and again held that to warrant the reversal of the commission's order denying compensation the record must disclose such material, substantial, competent and uncontradicted evidence as to justify the conclusion as a matter of law that the commission acted arbitrarily in finding as it did. The cases to this effect are very numerous. See for example *Kent* v. *Industrial Comm.*, 89 Utah 381, 57 P. 2d 724; *Norris* v. *Industrial Comm.*, 90 Utah 256, 61 P. 2d 413; *Barney* v. *Industrial Comm.*, 90 Utah 539, 63 P. 2d 249; *Wherritt* v. *Industrial Comm.*, 100 Utah 68, 110 P. 2d 374; *Crane* v. *Industrial Comm.*, 97 Utah 244, 92 P. 2d 722; *Salt Lake County* v. *Industrial Comm.*, 101 Utah 167, 120 P. 2d 321; *Utah Fuel Co.* v. *Industrial Comm.*, 102 Utah 26, 126 P. 2d 1070; *Godfrey* v. *Industrial Comm.*, 105 Utah 324, 142 P. 2d 174.

I am unable to agree that as a matter of law the commission was arbitrary in refusing to find that the exertion caused the heart attack and the resulting death. I agree with Mr. Justice WADE that it is not greatly material whether the exertion was ordinary for the job or unusually heavy if it be definitely established that the exertion did in fact cause the internal failing. Nevertheless, as in the *Dee Hospital case* where the exertion was beyond that reasonably called for by the work, and a heart attack occurred, especially in a man advanced in years, the probability that the exertion caused the failure is greatly increased. The exertion is more easily identified as the cause of the internal failing if that exertion has been unusually heavy for the job and the man, and, as stated in the *Dee Hospital case*, I think it is necessary that the connection between the exertion and failing be so connected in time as to preclude a likelihood of its being not service-connected. Otherwise the doors will be left wide open for many heart attacks not clearly the result of exertion to claim compensation. As will be subsequently noted in detail, it is much more difficult to ascertain whether or not the internal failing resulted from strain or exertion in the course of the employment than it is to trace the cause of external injuries. Recognizing this, we held in *Thomas D.*

*Dee Memorial Hospital* v. *Industrial Comm.*, supra, that the Commission would be warranted in requiring clear and convincing proof that the claimed injury resulted because of the exertion; that merely showing a possibility or even some likelihood of such a cause and effect will not suffice. With these concepts in mind we turn to the evidence adduced.

The work being done by the decedent leading up to the time a fellow employee noticed symptoms of a heart attack was manual work—but insofar as the record discloses it was the normal work required by the job. The decedent had been working on this job doing similar work for about 8 or 9 months. When he came on the job that morning he and another employee, Francom, brought six or eight wheel-barrows full of coal into the furnace room. They then, by use of a mechanical winch, pulled the carcass of a rather large horse onto a skinning block. Francom testified that

"I was skinning on the left side and he [deceased] was skinning on the right side. He was a big horse, * * * and [deceased] got hold of his hind leg to pull him over onto his back when he said 'has Andy got one of those cookers open?' I said I guess not. He was flushed in the face and purple around the mouth * * *."

There is nothing more positive from which it can be ascertained that immediately prior to the appearance of the symptoms of a heart attack the deceased expended an extraordinary amount of energy. As to the exertion used when he took hold of the leg, Francom testified:

"He took hold of the hind leg to straighten it up so he could skin down the hind leg." Q. "Would you say whether he exerted himself heavily?" A. "He could have done." Q. "It is your opinion he did?" A. "Yes."

Francom's opinion cannot in law be said to be based on what he saw. It is equally probable that after noting the various symptoms he reasoned that the deceased had pulled violently on the leg. He was questioned at length concerning this, but never once did he say that he saw the deceased exert himself heavily by pulling on the leg. Even granting

that the deceased did pull on the leg there is no evidence that the energy expended was unusual for the job or more than the deceased was accustomed to use in the performance of his work. This fact is not mentioned to detract from the holding of this court that if an ordinary industry-connected exertion actually resulted in the failure, compensation may be had, but it is mentioned because where the strain or exertion is unusual or exceptionally heavy the nature of the exertion itself may brand it as the cause of the internal failing. In both the *Hammond case* and the *Dee Memorial Hospital case* the evidence showed unusually heavy exertion over a considerable period of time. The work was much heavier than the work to which the employee had been accustomed. If the exertion is unusually heavy it helps to strengthen the conclusion that the exertion caused the heart attack. In *Cherdron Construction Company* v. *Industrial Comm.* the strain came suddenly when the worker tried to hold a heavy load of cement from rolling down hill. Here again the nature of exertion helped to establish the cause and effect relationship. The evidence concerning the nature of the exertion in the instant case was not such that it unerringly branded the exertion as the cause of the failing so that the commission as a matter of law was compelled to so conclude.

In the opinion of Dr. Hagen the death resulted from coronary occlusion. When asked the question:

"I think you stated that an occlusion or an angina would ordinarily be produced by either strain or over-exertion or high emotion?"

the doctor answered:

"That can have a tendency to cause it, but research work shows that the largest number of coronary occlusions come while people are in bed relaxed."

Dr. Oldroyd, called by the applicant, stated that assuming that the heart attack came on suddenly while Robertson was working, he would conclude that the occlusion was caused by overexertion. But Dr. Oldroyd also stated that the same

thing could have happened without known cause and that it might as well have happened while Robertson was asleep in bed. No autopsy was performed to ascertain whether or not the deceased had long been suffering from a diseased or weakened heart. Under our decision the burden of proof on this point would be on the applicant. *Wherrit* v. *Industrial Comm.*, supra; *General Mills* v. *Industrial Comm.*, 101 Utah 214, 120 P. 2d 279. The case is one in which I think the commission could properly have found that the heart attack was caused by the exertion, but the evidence does not point so unerringly to that conclusion that we should say as a matter of law that the commission was arbitrary in not so finding.

The evidence in *Offret* v. *Industrial Comm.*, supra, presented a stronger case than this, yet we affirmed the commission in its order denying an award. There the applicant was known to be suffering from a heart ailment which could easily be aggravated by heavy manual labor. He was engaged in making repairs on a steam boiler. He removed about nineteen wheelbarrow loads of ashes from the ash pit and did other work around the outside of the boiler, all of which was strenuous. He then went into the space between the flues and the top of the boiler in order to tighten a burr. It was necessary for him to lie down and reach upward to the burr. While in this cramped position and while pulling on the burr he suffered severe pain in the chest accompanied by a feeling as if something had been torn. He suffered temporary loss of action, etc. The medical testimony was to the effect that he could have suffered the heart attack without the exertion of climbing into the cramped position to tighten the burr. All the doctors were of the opinion that hard physical labor would tend to speed decompensation. We held that the commission undoubtedly could have found in favor of the applicant. But we, recognizing that the statute leaves questions of fact to the commission, affirmed the order denying the award.

I am unable to agree with the conclusion reached by Mr. Justice McDONOUGH that the facts of the *Hammond case,*

supra, (which was decided prior to the *Offret case*, supra) make that case controlling. It is true that there, as here, the commission denied compensation, and that in the *Hammond case* we reversed. The basis of the Commission's order denying compensation in the *Hammond case* was its erroneous conclusion that all of the testimony concerning the relationship between the exertion and the heart attack was hearsay. We pointed out considerable evidence which could not be considered as hearsay. The evidence without conflict showed unusually heavy exertion. The medical testimony of one doctor who examined the employee immediately prior to his death was positive to the fact that the heart ailment was brought on by extreme overexertion. The only other doctor called as a witness testified that overexertion would aggravate the preexisting weakened condition of the heart. Further examination of this doctor was halted by the commission by a comment that the doctor had already testified that the exertion shown would aggravate the preexisting condition and that such a showing was all that was necessary to support a compensation award. Thus the unusual nature of the exertion itself branded it as the cause of the internal failing and the testimony of the doctors was definitely to the effect that the exertion caused the heart failure. The commission did not hold that the relationship between the exertion and the failing of the heart had not been demonstrated by the evidence. It merely held that such evidence was all hearsay. We held that there was uncontradicted, competent evidence to show that the exertion did aggravate the pre-existing heart ailment and therefore we set aside the award and remand for further proceedings. The nature of the exertion and the medical testimony in that case both pointed much more strongly to the cause (exertion) and effect (heart failure) than in this case.

I do not say that the evidence here would not sustain a finding by the commission that Robertson had suffered heart failure because of exertion in the course or arising out of his employment. I simply take the view that the commission was not arbitrary in refusing to accept that con-

struction of the evidence. It may have reasonably concluded that the applicant had not carried the burden of proof in that regard. If the commission was not arbitrary in refusing to accept that construction, then the only remaining question is whether an injury or internal failing suffered while in industry, that is, in the duration of the employment, is necessarily in the course of the employment.

Much has been written respecting the difference between "course of" and "arising out of" the employment. In fact some authorities have applied to the term "in the course of the employment" a conceptional content which other authorities have applied to the term "arising out of the employment" and vice versa. But under our Act it is ordinarily not necessary to distinguish between these concepts.

In *State Road Comm.* v. *Industrial Comm.*, 56 Utah 252, 190 P. 544, 545, the employee was struck and killed by lightning. The court concluded that while the accident arose "in the course of" the employment, it did not "arise out of" the employment "for the reason there does not appear to be any causal connection" between the accident and the employment. It should be here noted that "causal connection" as used in the *State Road Commission case* has a narrower meaning than service-connected as used in this opinion.

In *Andreason* v. *Industrial Comm.*, 98 Utah 551, 100 P. 2d 202, 205, the disability and death resulted from a disease which the court found was contracted at work and while handling the offal from dead animals. In holding that there was coverage under the Act, the court said:

" 'An accidental injury' might well be expressed as 'a disability happening by chance or unexpectedly.' It, however, must be connected with the employment. In other words, we do not wish to imply that, because one becomes ill while at work, the statute applies to him, even though it may be that he became ill unexpectedly. That alone is not sufficient to make this case one of an accidental injury. There must be a causal connection between his employment, or his place of employment, and his illness—something which happened to him in the performance of his duties, or some contact he made at his place of employment while on duty there—which forms the connecting link between his employment and the contraction of the illness."

We reaffirmed this principle in *Vitagraph, Inc.* v. *Industrial Comm.*, 96 Utah 190, 85 P. 2d 601, 605, wherein, after discussing many authorities we said:

"And so the rule through the authorities seems to be that where a workman is injured in the course of his employment, to be compensable the workman must at the time of the injury have been engaged in doing some work for the employer, or under the direction and control of the employer, * * * or in doing some act necessary to be done for the employment or incidental thereto and not detachable therefrom."

This princpile was again enunciated in the *Thomas D. Dee Memorial Hospital* v. *Industrial Comm. case,* supra. That case, like this one, involved a heart attack while the applicant was working on the job. But there we had definite proof that overexertion was a contributing cause to the heart attack and the commission had so found. We there said:

"* * * the expert medical testimony adduced clearly established the fact that the heart attack was directly attributable to this extra work or overexertion. We do not intend to open the door to recovery for all injuries of this type merely because they occur on the premises of the employer during the hours of the employment. In such cases the commission would be warranted in requiring clear and convincing proof that the claimed injury resulted because of the extra work or overexertion; merely showing a possibility of such a cause and effect will not suffice."

See also *Tavey* v. *Industrial Commission,* 106 Utah 489, 150 P. 2d 379, wherein the court expressed doubt that recovery could be allowed upon a mere showing that the applicant suffered disablity solely by reason of illness not caused or accelerated by her employment. The commission was directed to allow compensation in that case because of the fact that in her fall the plaintiff struck her head upon a bookcase situated upon the premises. The striking of the head was the accident which was held to have occurred in the course of the employment.

From these authorities I conclude that it is necessary that the claimant establish some connection between the

injury and the employment before compensation will be allowed. The mere fact that the employee becomes ill on the premises of the employer will not suffice. Employers should not be charged with internal failures not contributed to nor caused by the employment nor occurring in the pursuit thereof nor in any way employment-connected. If such were not the rule, I seriously doubt that Sec. 42-1-43, U. C. A. 1943, would be constitutional. An employer cannot be made the insurer of the health and safety of all his employees against all causes of disability merely because they happen on the premises during working hours. The disability must have some rational relation to the employment or industry. An accident is employment-connected where the employment exposed the employee to a hazard of the employment or where it so situated him as to expose him to a hazard not of the employment but extraneous thereto which injured him.

My conclusions are: An internal failure caused by exertion or overexertion is an accident within the Act. That before disability or death flowing from such accidents is compensable it must be shown that the internal failing was employment-connected. The burden of showing this employment-connection is upon the applicant. Unless the evidence is such as to compel the conclusion that the commission was arbitrary in failing to find that the internal failure was service-connected, we should not set aside its decision. As explained heretofore the evidence in this case is not such as to compel the commission to find that the exertion performed in the pursuit of the employment caused or contributed to the internal failure.

I therefore dissent.