IGA FOOD FAIR and State Insurance Fund, Plaintiffs,

v.

John N. MARTIN and the Industrial Commission of Utah, Defendants.

No. 15440.

Supreme Court of Utah.

Aug. 21, 1978.

James R. Black, M. David Eckersley, of Black & Moore, Salt Lake City, for plaintiffs.

Robert B. Hansen, Atty. Gen., Stephen D. Luster, Salt Lake City, for defendants.

CROCKETT, Justice:

The Industrial Commission found that a heart attack suffered by John N. Martin during his work as a meat cutter for plaintiff IGA Food Fair was "an accident arising out of and in the course of his employment," and made appropriate awards for temporary total and permanent partial disability. IGA seeks to reverse the finding and to nullify the award on the ground that they are not supported by the evidence.

 In preface to considering the evidence, which we do under the assumption that the Commission believed those aspects thereof which support its findings,[1] we set forth certain basic rules applicable in such a controversy. Conceded is plaintiff's point that no accident is to be found where an injury or disability is merely a gradual development, even if this is because of the nature or conditions of the work. A prerequisite to compensation under the Act is that there be some identifiable accident in the sense that there is an unanticipated, unintended occurrence different from what would be normally expected in the usual course of events.[2] However, as we have heretofore indicated this does not preclude the proposition that due to extraordinary exertion or stress a climax might be reached and come within the just stated definition of an accident.[3]

At the time of concern here Mr. Martin was 33 years old. He is 5 feet 6 inches tall and of slender build, weighing about 130 lbs. He was in good health, having never been seriously ill. He had been a meat cutter since he was 15 years old. On July 13, 1976, he was so engaged for Plaintiff IGA Food Fair, and its store in Vernal.

For the two weeks prior to the accident, the store had been conducting a Grand Opening, creating extra work and longer hours for him. During the morning of July 13, 1976, he was unloading a shipment of meat. This required him to lift boxes of meat weighing from 30 to 80 pounds and to move beef quarters weighing up to 150 lbs. At about 10:30 he began developing chest pains and feeling distressed. However, he continued to work until about 3:00 p. m. when the distress so increased that he went to the office of Dr. Paul Stringham who examined him and diagnosed a heart attack. The doctor arranged for his admission to the Uintah County Hospital. He was later released from the hospital and referred for treatment to Dr. Clyde Null in Salt Lake City. He underwent open heart surgery and remained under the care of Dr. Null up to the time of the hearing.

In accordance with Sec. 35-1-77 U.C.A. 1953, the medical aspects of the claim was referred to a panel of physicians. Pertinent questions and answers are:

Question: Were the work activities of the claim on July 13, 1976, a material factor which contributed to, or caused the inferior myocardial infarction?

Answer: The Panel can give only a qualified answer to this question. *It is possible* that the work activities were a contributing factor to his myocardial infarction, but a degree of probability cannot be determined by the information that the Panel has. We wish to stress that he had no pre-existing symptoms of coronary artery disease, yet obviously had severe disease at the time of the alleged injury . . . *The Panel does not feel that there were any unusual work activities on that particular day.* There is no way of telling that had the work activities not occurred, he might still have had a myocardial infarction at that time and of the same degree of severity. [All emphasis added]

\* \* \* \* \* \*

1. *Jensen v. U. S. Fuel Co.,* 18 Utah 2d 414, 424 P.2d 440.

2. *Carling v. Ind. Comm.,* 16 Utah 2d 260, 399 P.2d 202.

3. See *Andreason v. Ind. Comm.,* 98 Utah 551, 100 P.2d 202; *Merle Hinds Co. Inc., v. Ind. Comm.,* 20 Utah 2d 322, 437 P.2d 451.

Question: What is claimant's total permanent physical impairment, if any, resulting from all causes and conditions, including any injuries sustained by claimant as a result of his work activities on July 13, 1976?

Answer: 75%.

Question: What is the degree (percentage) of permanent physical impairment attributable to the injuries sustained by claimant as a result of the work activities of July 13, 1976?

Answer: 75%

Question: What is the degree (percentage) of permanent physical impairment attributable to previously existing conditions prior to July 13, 1976, whether due to accidental injury, disease, or congenital disease?

Answer: 0%

Question: What is the period or periods of time claimant has been temporarily totally disabled, if any, as a result of the injuries sustained in the work activities of July 13, 1976?

Answer: . . . temporarily totally disabled for a period of three months. This is close to the time that his consulting physician released him to return to work.

In its argument plaintiff stresses the first answer above quoted, in which the panel states that, "It is *possible* that the work activities were a contributing factor" to what happened to Mr. Martin's heart, coupled with its statement that "the panel does not feel that there was any unusual work activities on that particular day" supports the panel's statement "that there is no way of telling, with any assurance . . . that his injuries were caused by his work activities."

Concerning the medical panel report this is to be said: The panel of course performs an important function in giving the Commission the benefit of its diagnosis relating to those matters that are particularly within the scope of its expertise. But that is the extent of its prerogative. The final responsibility of making the decision as to the issues in such a proceeding is given to the Commission.[4] The remark included in its report that "the panel does not feel that there was any unusual work activities on that particular day" impresses us as but a gratuitous conclusion upon a matter of fact unrelated to its medical expertise.

In regard to the Commission's performance of its duty in determining the critical issue as to whether what happened to claimant Martin was an industrial accident, these further observations are pertinent: we agree with plaintiff's urgence that a finding of fact and the imposition of liability cannot properly be made on a mere possibility, but that can be done only if there is a basis upon which reasonable minds acting fairly thereon could conclude that the greater probability of truth lies therein.[5] Further, that in so discharging its responsibility it was the prerogative and the duty of the Commission to consider not only the report of the medical panel, but also all of the other evidence and to draw whatever inferences and deductions fairly and reasonably could be derived therefrom. On analysis of the evidence in the light of the rules of law hereinabove set forth, it is our opinion that it plainly appears therefrom that there is such a reasonable basis in the evidence upon which the Commission was justified in finding that the injury and disability to Mr. Martin resulted from an extraordinary exertion in the course of his work which produced an unusual and unanticipated result and thus comes within the definition of an accident.[6]

4. U.C.A., 1953, Sec. 35–1–85; That it is not the proper function of the medical panel to take over this responsibility of the Commission, see statement in *Jensen v. U. S. Fuel Co.*, footnote 1 above.

5. See *Morris v. Farmers Home Mutual Ins. Co.*, 28 Utah 2d 206, 500 P.2d 505; *Lindsay v. Gibbons and Reed*, 27 Utah 2d 419, 497 P.2d 28; McCormick on Evidence, Sec. 319.

6. See comparable cases where there was extra exertion, causing unusual strain on the heart, *Robertson v. Ind. Comm.*, 109 Utah 25, 163 P.2d 331; *Jones v. Calif. Pack. Corp. et al.*, 121 Utah 612, 244 P.2d 640; *Powers v. Ind. Comm.*, 19 Utah 2d 140, 427 P.2d 740; and see *Thomas*

Affirmed. Applicant Martin is awarded costs.

ELLETT, C. J., and MAUGHAN and HALL, JJ., concur.

WILKINS, Justice (concurring with comments).

I concur, adding these comments.

Though there is tension between the first answer of the medical panel, noted in the main opinion, and its other answers, the Commission was certainly at liberty to believe one answer where the panel stated that the claimant sustained physical impairment "attributable to the injuries sustained by claimant *as a result of the work activities of July 13, 1976*" (emphasis added of "75%", particularly when this last answer received strength from the ones immediately preceding and following it.

*v. U. S. Cas. Co.*, 218 Ga. 493, 128 S.E.2d 749, a case of similar facts where the court said that, due to the employee's appearance of weakness and pain immediately after exertion and his asking for medical help, there was sufficient evidence to make an issue of fact as to whether he suffered an accident; See also *Nuzum v. Roosendahl Const. & Mining Corp.*, Utah, 565 P.2d 1144 (1977).