Douglas L. SCHMIDT, Plaintiff,

v.

The INDUSTRIAL COMMISSION OF UTAH, Kenway Engineering, Inc., and Industrial Indemnity, Defendants.

No. 16097.

Supreme Court of Utah.

Aug. 8, 1980.

Jay A. Meservy of Verhaaren & Meservy, Salt Lake City, for plaintiff.

Robert B. Hansen, Atty. Gen. and Floyd G. Astin, Asst. Atty. Gen., K. Allan Zabel, Stewart L. Poelman, Salt Lake City, for defendants.

MAUGHAN, Justice:

The plaintiff, Douglas L. Schmidt, appeals from an order of the Industrial Commission denying his application for disability compensation. We reverse the order and remand the matter to the Commission for further proceedings. All statutory references are to Utah Code Annotated, 1953, as amended.

Douglas L. Schmidt began working for the defendant, Kenway Engineering, Inc., October 25, 1976, as a rough–cut sawman. His principal employment duty was the cutting of steel to various sizes for use in the shop. The steel pieces he was required to

handle varied in weight from a few ounces to as much as 200 pounds. While an overhead crane was present in the shop its use by other employees rendered it unavailable to the plaintiff at various times. When the crane was unavailable the demands of the position required the plaintiff to move the heavy pieces alone or with the aid of fellow employees. The plaintiff testified at the Commission Hearing it was a common occurrence in carrying the larger pieces for one of the individuals involved to suddenly drop the piece. This would result in the other person absorbing the shock of the metal hitting the floor.

The plaintiff, a 21 year old male, had a prior history of back disorders. As an adolescent he had contracted Scheurmann's disease, which resulted in severe pain in his back involving the T11, T12 and L1 vertebrae. This osteochrondrosis was juvenile in nature and the plaintiff testified that from a year to a year and a half prior to his accepting employment at Kenway Engineering he experienced no difficulties or problems with his back.

However, by February 1977, the plaintiff was having significant problems with his back. He testified initial soreness began in December of 1976, increased gradually in intensity and duration through January and into February. He then went to a doctor for care. X–rays taken at that time showed a spondylolysis in the lower lumbar region and a possible appendicolith. Following additional x–rays confirming the existence of the appendicolith the plaintiff underwent an appendectomy. After recovery from the appendectomy the plaintiff returned to work. By June of 1977, he was again experiencing significant pain in his back. He was seen by three different medical doctors, these consultations culminated in a laminectomy and fusion of L5 S1 level vertebrae on July 19, 1977.

The plaintiff's application for workmen's compensation benefits was denied. Following a hearing the administrative law judge entered findings of fact, conclusions of law and an order denying the benefits requested. After the plaintiff's submission of a memorandum in support of his motion for review, the Industrial Commission denied the plaintiff's motion and affirmed the actions of the administrative law judge.

The issues presented on appeal concern the administrative law judge's conclusion no "accident" occurred for which the plaintiff could be granted compensation, failure of the administrative law judge to refer the medical aspects of the case to a medical panel and the exclusion of certain evidence presented by the plaintiff at the hearing.

Concerning the first issue, the plaintiff candidly explained prior to and at the hearing he could not pinpoint any specific time or occurrence as the origin of his present back problems. The judge explained in his findings of fact:

"The application did not specify a date on which an accident occurred but referred only to February, 1977, and the applicant described the accident by stating: 'Under the stress of lifting steel daily I developed accute low back pain.' "

However, at the hearing the plaintiff recounted an incident occurring in mid–December, in which he slipped while handling a piece of steel and struck his knee on the saw table. Although the blow was allegedly very painful, the plaintiff testified, because he did not want to create a negative impression on his employer, he did not report it. A short time later he hit the same knee on a piece of scrap metal protruding from a waste can and reported that incident to his supervisor.

The plaintiff also stated generally the above–mentioned problem with the handling of the steel but could not identify a specific instance as adversely affecting his back. While the back pains the plaintiff complained of in February, 1977, allegedly originated contemporaneously with the slipping incident the plaintiff introduced no direct proof he experienced or realized any specific damage to his back because of that incident.

Section 35–1–45 provides compensation for industrial accidents when the employee: "is injured . . . by accident arising

out or or in the course of his employment, wheresoever such injury occurred, provided the same was not purposely self–inflicted." The administrative law judge concluded the plaintiff was not entitled to compensation, because he failed to establish he sustained an injury as a result of an identifiable accident or accidents. Quoting from *Pintar v. Industrial Commission*,[1] the judge explained:

"It is therefore, a prerequisite for compensation that his disability be shown to result, not as a gradual development because of the nature or condition of his work, but from an identifiable accident or accidents in the course of the employment."

■ In this jurisdiction, it is settled beyond question an internal failure brought about by exertion in the course of employment may be an accident within the meaning of 35–1–45, without the requirement that the injury result from some incident which happened suddenly and is identifiable at a definite time and place.[2] As this Court explained in *Purity Biscuit Co. v. Industrial Commission:*[3]

"In *Cherdron Construction Co. v. Simpkins*, 61 Utah 493, 214 P. 593, 596, this court held that '[t]he underlying principle seems to be that the injury must happen suddenly, undesigned and unexpected, and at a definite time and place.' In the *Dee Hospital* [*v. Ind. Comm.*, 109 Utah 25, 163 P.2d 331] case we have relaxed the requirement that it be sudden and at a definite time and place so that the essential requirement now seems to be that it be unexpected and not designed."

■ It is equally well settled the injury received may be accidental even though the exertion is that required in the ordinary course of employment.[4] If an employee incurs unexpected injuries, including internal failures, caused by the ordinary duties of his employment he is eligible for compensation under 35–1–45.[5] Therefore, the administrative law judges conclusion of law was erroneous and did not reflect our contemporary standard.

■ The existence of an unexpected injury, however, is the beginning rather than the end of the Commission's inquiry. This Court's interpretation of 35–1–45 requires the existence of a causal connection between the injury and the employment. Justice Wade explained this requirement in *Purity Biscuit:*[6]

". . . in a case of this kind where the employee suffers an internal bodily failure or breakdown the burden is on the applicant to show that the exertion was at least a contributing cause thereof. In other words, . . . in cases where disease or internal failure causes or is the injury there must be a causal connection between the employment and the injury."

Many times the determination of the existence of a causal connection between the injury and the employment will depend on the production and interpretation of medical evidence. To establish agency expertise in this area the legislature enacted 35–1–77. This section provides:

"Upon the filing of a claim for compensation for injury by accident, or for death, arising out of or in the course of

1. *Pintar v. Industrial Commission*, 14 Utah 2d 276, 382 P.2d 414 (1963).

2. *Jones v. California Packing Co.*, 121 Utah 612, 616, 244 P.2d 640, 642 (1952); see also *Robertson v. Industrial Comm.*, 109 Utah 25, 163 P.2d 331 (1945); *Thomas D. Dee Memorial Hospital Assoc. v. Industrial Comm.*, 104 Utah 61, 138 P.2d 233 (1943); *Hammond v. Industrial Comm.*, 84 Utah 67, 34 P.2d 687· (1934).

3. *Purity Biscuit Co. v. Industrial Commission*, 115 Utah 1, 17, 201 P.2d 961, 969 (1949).

4. Id., 201 P.2d at 969.

5. Justice Wolfe explained in his dissenting opinion in *Robertson*, supra note 2, 163 P.2d at 338: "Thus where exertion or overexertion in the course of the employment causes disability or death, I agree that compensation should be allowed."

6. *Purity Biscuit*, supra note 3, 201 P.2d at 969; see also *M & K Corp. v. Industrial Comm.*, 112 Utah 488, 189 P.2d 132 (1948); *Robertson v. Industrial Comm.*, supra note 2; *Andreason v. Industrial Comm.*, 98 Utah 551, 100 P.2d 202 (1940).

employment, and where the employer or insurance carrier denies liability, the commission shall refer the medical aspects of the case to a medical panel . . . ."

This statute mandates the submission of the medical aspects of the case to the medical panel.[7] In the present case, as in most cases involving internal injury, the determination of the existence of the requisite causal connection depends in part on the accumulation and interpretation of medical evidence. The language of the statute is clear. When an accidental injury, such as in the present case, has occurred the submission of the medical aspects of the case, including those involving causation, is mandatory.

At the hearing, the administrative law judge excluded certain evidence presented by the plaintiff because it was hearsay and thus inadmissible. Section 35–1–88 states:

"Neither the commission nor its hearing officers shall be bound by the usual common–law or statutory rules of evidence."

The hearsay rule has no application in a commission proceeding and the commission and its hearing officers may receive and consider any hearsay evidence presented to it.[8] Therefore the administrative law judge erred in excluding this evidence on the basis of the hearsay rule.

Because the present injury is of a type held by this Court to fall within the purview of Section 35–1–45, the administrative law judge's conclusion that no accident occurred should not be reached from the facts presented, without submission of the matter to the medical panel. The case is remanded to the Commission for further proceedings. Those proceedings shall include the submission of the medical aspects of this problem to a medical panel.

WILKINS, Justice (concurring):

I concur that this matter should be remanded and the medical aspects referred to a medical panel. Because, however, of conflicting case law in this State interpreting the statutory requirement that to support an award of compensation a worker must be injured "by accident," I deem it appropriate to enlarge on the analysis of this point found in the main opinion with a view to providing the Industrial Commission with a consistent standard to apply.

The dissenting opinion of Mr. Chief Justice Crockett centers on the necessity of identifying "*an* accident" which causes injury. As Professor Arthur Larson (hereafter "Larson") points out in his treatise, *The Law of Workmen's Compensation* (1980), "[t]he basic and indispensable ingredient of 'accident' is unexpectedness".[1] This Court has recognized as much in past cases.[2] Larson continues:

A second ingredient, however, has been added in most jurisdictions: The injury must be traceable, within reasonable limits, to a definite time, place, and occasion or cause. Justification of this widespread addition is not entirely clear. When the phrase "accidental injury" is used, or the equivalent phrase "injury by accident," there is no occasion, as a matter of grammar, to read the phrase as if it referred "*an* accident," and then proceed to conduct a search for "*the* accident".[3] (emphasis in original)

The main opinion makes it clear that in Utah "accident" connotes an unlooked for mishap which is not expected or designed.[4]

---

**7.** *Lipman v. Industrial Comm.*, Utah, 592 P.2d 616, 618 (1979).

**8.** See *Ogden Iron Works v. Industrial Comm.*, 102 Utah 492, 132 P.2d 376 (1942).

**1.** 1B Larson at 7-4, citing *inter alia, Residential & Commercial Construction Company v. Industrial Commission*, Utah, 529 P.2d 427 (1974).

**2.** See, e. g., *Purity Biscuit Co. v. Industrial Commission*, 115 Utah 1, 201 P.2d 961 (1949);

*Residential & Commercial Construction Company v. Industrial Commission*, supra.

**3.** 1B Larson at 7-5.

**4.** This is the language of the first English case interpreting the English workmen's compensation act which was adopted in 1897, *Fenton v. Thorley & Co.*, [1903] A.C. 443. *Fenton* has often been cited in Utah cases including *Purity Biscuit*.

Mr. Chief Justice Crockett also expresses concern that without the requirement of identifying *an* accident in compensation cases, "[t]he practical effect would be to make the employer a general insurer of the health and well–being of his employees". In my view, protection against unwarranted awards for internal failure is not to be found in requiring identification of *an* accident. Rather protection against such awards is found in requiring a medically demonstrated causal connection between the injury and the employment. With the issue being one primarily of causation, the importance of the statutorily mandated medical panel becomes manifest. It is through the expertise of the medical panel that the Commission should be able to make the determination of whether the injury sustained by a claimant is causally connected or contributed to by the claimant's employment.

There is no reason to expect that application of the standards laid down in this case will render employers the insurers of the health of their employees. Rather there is every reason to expect that the beneficent and humanitarian purposes of the worker's compensation act will be effectuated.

STEWART, J., concurs in result.

CROCKETT, Chief Justice (dissenting):

The foundational rules upon which this Court should review the Commission's ruling are: that it is the Commission's prerogative to judge the evidence, and if there is any reasonable basis therein to justify the Commission's finding, this Court should not disturb it.[1] Conversely stated and specifically applicable here: when the Commission has refused to find a work–connected accident, this Court should not reverse and direct such a finding unless the evidence is so clear and persuasive that all reasonable minds acting fairly thereon must necessarily so find.[2]

Bearing in mind those rules, the salient and what should be the controlling proposition here is that the Commission was not persuaded that the plaintiff had met his burden of proving that he suffered an accident arising out of or in the course of his employment.

The position taken in this dissent does not disagree with the proposition that even though an employee has a preexisting abnormal condition, if it is aggravated into a compensable injury or disability *by an accident* which arises out of or occurs in the course of his employment, as required by the statute, it is compensable. Nor do I question that if there is some extraordinary exertion or stress which produces an occurrence which the Commission finds to come within the definition of accident, it can be found compensable.[3]

The point of disagreement with the main opinion is its statement that ". . . it is settled beyond question that an internal failure brought about by exertion in the course of employment may be an accident within the meaning of Sec. 35–1–45, *without the requirement that the injury result from some incident* which happened suddenly and is identifiable at a definite time and place."

It is submitted that that statement is not justified by the cases cited in support thereof; and I doubt that any such case can be found. On the contrary, the statement is squarely inconsistent with the applicable statute, and with all of the case law on the subject with which I am acquainted.

The first place to test the soundness of the proposition just stated is the applicable statute. In my judgment, Sec. 35–1–45, U.C.A.1953, leaves no room for doubt or misunderstanding. It states plainly and simply that compensation is to be paid when the employee "is injured . . . *by accident* arising out of or in the course of his employment." There similarly should be no misunderstanding or confusion on the proposition that the term "accident" im-

1. *Kent v. Ind. Comm.*, 89 Utah 381, 57 P.2d 724.

2. Id.; and see *Vause v. Ind. Comm.*, 17 Utah 2d 217, 407 P.2d 1006.

3. *Graybar Electric Co. v. Ind. Comm.*, 73 Utah 568, 276 P. 161.

ports that there must be some unanticipated event or occurrence, different from what would normally be expected to occur in the usual course of events.[4] It is submitted that a study of the numerous cases decided by this Court on the subject, and other authorities as well, will reveal that without exception, they have been concerned with whether there was in fact some incident or occurrence which would come within the definition of accident, as is expressly required by the statute.[5]

Controversies of this character are so common that such cases are found in practically every volume of the Utah Reporter; and it would serve no useful purpose to burden this page with excessive citations. In the interest of brevity, it is sufficient to say that on the point of controversy herein, the cases are all of generally similar import. It seems fair to assume that the plaintiff (and the main opinion) would select those cases which would best give support for its thesis quoted above, and upon which its reversal of the Commission's order necessarily must rest.

The case of *Robertson v. Ind. Comm.*,[6] on which the main opinion places reliance is as good an example as any. In that case, the burden of the main opinion was to demonstrate that there was an *extraordinary exertion* in manipulating and skinning an *extra large horse*, so that the heart seizure would come within the definition of such an unexpected occurrence and thus could be found to be an accident. I join in the main opinion's approval of Justice Wolfe's reasoning and statement of the law in his dissent in that case. He stated the standard rule of review, which if applied to this case would affirm the Commission, that: "Unless the evidence is such as to compel the conclusion that the Commission was ar-

bitrary in failing to find that the internal failure was service—connected, we should not set aside its decision."[7] And upon the basis of his previously made explanation that it was the prerogative of the Commission to find the facts, he dissented from the reversal of the Commission's decision.

Another good example of the principle involved is our recent case of *IGA Food Fair v. Martin.*[8] There, the applicant was undergoing unusual exertion in unloading a shipment of heavy boxes of meat and, because of the extraordinary stress, suffered a heart attack. The same comment is to be made about *Jones v. Ind. Comm.*,[9] in which the extraordinary stress was from being required to repeatedly crank a balky motor over a long 16—hour double shift.

It is important to realize that the removal of the requirement that there be some event which can be regarded as an accident arising out of or occurring in the course of employment, so that it need only appear that some injury or disability developed which could be related to the employee's work, would be a dramatic change in our law. The practical effect would be to make the employer a general insurer of that aspect of the health and well—being of his employees. This might be of temporary benefit to a few individuals in the labor force who may have some infirmity. But I think if we take a second look, such a rule would do them more harm than good in the long run.

The forcing of employers to become, in practical effect, such general insurers of employees would add to the already plentiful burdens of going into or carrying on enterprises, which furnish jobs for others, and would thus reduce opportunities for employment. More especially, with respect

---

4.  *Tintic Milling Co. v. Ind. Comm.*, 60 Utah 14, 206 P. 278; *Carling v. Ind. Comm.*, 10 Utah 2d 260, 399 P.2d 202.

5.  *Tintic Milling and Mining Co. v. Ind. Comm.*, 60 Utah at 22, 206 P. at 281 states:

    If the injury is incurred gradually in the course of the employment, and because thereof, and there is no specific event or occurrence known as the starting point, it is

held to be an occupational disease, and not an injury resulting from accident.

6.  109 Utah 25, 163 P.2d 331.

7.  Id. at 47, 163 P.2d at 341.

8.  Utah, 584 P.2d 828.

9.  121 Utah 612, 244 P.2d 640.

to persons who already have some infirmity, there would be even more adverse effect because economic necessity would force employers to give more searching examinations, and refuse to hire anyone with any history or indication of physical disability or handicap. I acknowledge that the proposition just stated should be considered by this Court only if it thinks it has the prerogative of making a dramatic change in policy and the law. It is my view that the Court has no such prerogative; and that the proper procedure for the long term benefit of employers, employees and the public generally is to follow the statute as it is written, and the adjudications thereon; and if there is to be any such dramatic change in the law, it should be done by the legislature. Then, everyone will know of that change in the law, when it takes effect, and how to govern themselves in accord therewith.

There is no question here, but that the plaintiff suffered from a pre–existing difficulty with his back, for which he had previously received medical treatment and which had existed at least since he was in junior high school, eight or nine years prior to this claim. As the main opinion itself fairly and properly points out, the plaintiff himself stated unequivocally that he could not identify any specific time or occurrence in his work as the origin of the disability in his back.

In response to various questions concerning whether there was any incident or occurrence from which the applicant's back problem resulted, he repeatedly stated that there was not. Typical of these answers is:

Q. Mr. Schmidt, isn't it true that you really cannot relate the onset on your back pain to any particular event that occurred while you were working for Kenway?

A. That's true. (R., p. 37)

On the basis of the whole evidence, the findings of the administrative law judge, adopted by the Commission, states:

. . . that the applicant has simply not met his burden of proving that an accident occurred which caused the injury complained of. We further note that there are no witnesses, no timely reporting and no showing of a relationship between the injury and the work of the applicant.

In regard to the question of reference to a medical panel: Plaintiff cites Sec. 35–1–77, which requires the Commission to refer "the medical aspects of the case to a medical panel . . .." As is true of all statutes, this one should be given a sensible and practical application. First, assume a hypothetical case in which the evidence was so absolutely clear that no one could disagree that the applicant had suffered no accident in the course of his employment. Would it yet be maintained that merely because he had filed an application for benefits and the employer had denied liability, the Commission was nevertheless compelled to refer the case to a medical panel. It seems idle to have to answer such a question, but the answer, of course, is no. The same reasoning applies here. Inasmuch as the findings and order of the Commission rest upon the proposition that considering the whole evidence, and particularly the plaintiff's own testimony, there was no basis upon which to find that there was a work–caused or connected accident, there would be no useful purpose to be served by referring the nonexistent medical aspects of the case to a medical panel.

Because there is no basis upon which it can be concluded that the action of the Commission was capricious, arbitrary or unreasonable, I would affirm its decision.

HALL, Justice (dissenting):

I join in the dissent of Mr. Chief Justice Crockett which I deem reflects the accurate state of the law in Utah. Particularly is this so in light of the most recent pronouncement of this Court in *Farmers Grain v. Mason*, Utah, 606 P.2d 237 (1980).